## CITY OF NORFOLK v. JOHN W. KEY.

September 5, 1951.

Record No. 3800.

Present, Eggleston, Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Jonathan W. Old, Jr.,* for the appellant.

*Ashburn, Agelasto & Sellers,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

This appeal involves a proper interpretation of section 40, Article II of chapter 3 of the Norfolk City Code of 1944, relating to the employees' retirement system of that city, as applied to an agreed statement of facts. The ordinance of which this section is a part became effective January 1, 1942, and it is provided that its provisions shall supersede any existing pension fund or similar plan, and that no further benefits shall be paid from any such fund or plan so superseded.

Section 40 reads as follows:

"(1) Upon the application of a member in service or of the head of his department, any member who has been totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without wilful negligence

on his part, may be retired by the board on an accidental disability retirement allowance, and not on an ordinary disability retirement allowance, not less than thirty nor more than ninety days next following the execution and filing of such application; provided, that the medical board, after a medical examination of such member, shall certify that he is mentally or physically totally incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that he should be retired.

"(2) The accidental disability retirement allowance shall be equal to the service retirement allowance if the member has attained his minimum service retirement age, otherwise it shall consist of:

"(a) An annuity which shall be the actuarial equivalent of his accumulated contributions at the time of his retirement; and

"(b) A pension which shall be equal to sixty-six and two-thirds per centum of his average final compensation."

John W. Key entered the service of the city of Norfolk as a patrolman and motorcycle officer on April 7, 1938. On July 14, 1940, and again on November 6, 1940, while in the performance of his assigned duties as a motorcycle police officer, he sustained injuries to his left leg, knee, thigh and hip. On each occasion he was struck by another motor vehicle operated by a stranger to the service of the city. Each time he was in the actual performance of his duty at a definite time and place, and free from wilful negligence. The injuries he received on the second occasion were the more extensive and severe. His injuries did not immediately disable him from the performance of his duties, and he continued in his work as a police officer until August, 1942. In August, he resigned to enter the service of the United States Coast Guard for the duration of the war, which was then in progress. Upon his discharge from the Coast Guard, he immediately returned, on November 2, 1945, to the service of the city of Norfolk in the division of police, and continued in that service until he was retired on September 1, 1948.

On September 1, 1948, the Medical Board of Norfolk, a board provided for in the retirement ordinance of the city, after a medical examination of Key, certified that he was "physically totally incapacitated for the further performance of duty;" that such incapacity was "likely to be permanent;" and that "he should be retired."

It is conceded that Key's retirement "was occasioned solely by his physical condition, and that he was totally and permanently incapacitated for duty as of September 1, 1948, as the natural and proximate result of one or both of the accidents occurring on July 14, 1940, and November 6, 1940, while he was in the actual performance of his duties, at some definite time and place, in the service of the city of Norfolk, without wilful negligence on his part."

Key, properly and seasonably, asserted his right to an "accidental disability retirement allowance" within the meaning of section 40 of the ordinance effective January 1, 1942. The city, however, notified Key that he would be paid the "ordinary disability retirement allowance," as provided in section 39 of the same ordinance. He was accordingly paid, and was being paid at the time of the institution of this suit, $50.91 per month, rather than $138.79 per month, the "accidental disability retirement allowance," provided under section 40.

It was also agreed and stipulated that the allowance under section 40 was refused "solely because the injuries which finally brought about the condition of total and permanent incapacity for duty were received by him at a time prior to the effective date of section 40 of the Norfolk City Code, and prior to his return to membership in the system in November, 1945."

In 1940, when Key received the injuries which resulted in his total physical incapacity eight years later, section 3 of an ordinance of the city of Norfolk, adopted in 1924, embracing only the membership of the Division of Police and the Division of Firemen, was in effect. It reads as follows:

"That any member of either of said Divisions who shall be totally incapacitated through injuries received in the actual performance of his duty shall, regardless of the length of his service, be retired on one-half (½) pay for and during the term of his natural life, subject to the provisions hereinafter contained."

Under the provisions of the "Police and Firemen's Pension Fund" ordinance of the city, containing the above section, no difference was made in the allowance for retirement whether caused by ordinary or accidental disability.

Key consequently filed his petition, (Code of Virginia, 1950, sections 8-578 to 8-585, inclusive), for a declaratory judgment and consequential relief. The cause came on to be heard upon

the petition, the answer of the city of Norfolk, a written stipulation as to the facts, and exhibits containing the pertinent provisions of the ordinances of the city. The trial court held that Key was entitled to the accidental disability retirement allowance claimed, and entered a decree adjudging and ordering the city of Norfolk to make payment to him accordingly.

In support of its position the city contends, first, that section 40 is applicable only in cases of accidents occurring subsequent to January 1, 1942, the date it went into effect, and that the provisions of its retirement system should not be given a retroactive effect but a prospective one. It further insists that Key, having left the service of the city in 1942, thereby ceased to be a member of the retirement system, and that when he returned to its service in 1945, he came in as a new member, and was not entitled to the benefits of section 40 for the accidents which occurred prior to his re-entry.

The claimant, on the other hand, invokes the principle that the ordinance must be liberally interpreted; that under the plain terms of section 40 an employee is entitled to a pension when he has become ''totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without wilful negligence on his part;'' that there is nothing in the language of the section which says that such injury must occur after January 1, 1942, or after the ordinance has become effective; and that since there is no language which excludes him from the benefits of the system, he is entitled to the accidental disability retirement allowance.

Legislation relating to the granting and payment of pensions and retirement allowances by municipal corporations is of comparatively recent origin in Virginia. In 1916 the General Assembly of Virginia authorized cities of the first class to establish a system of pensions for injured, retired or superannuated members of its police and fire departments. Acts 1916, page 397. In 1930, it authorized cities, towns and counties to make appropriations for the relief of police officers disabled by injury received ''while actually in the performance'' of their duties. Acts 1930, chapter 284, page 708. Subject to a number of amendments this Act now appears as section 51-112, *et seq.*, Code of Virginia, 1950.

A more comprehensive statute was enacted in 1940, authoriz-

ing the establishment of a system of pensions and retirements for the benefit of the personnel of police departments of counties, cities and towns having paid members of such departments. Acts 1940, chapter 408, page 737. This Act distinguished disability arising from "a natural cause or causes not originating in the performance" of the duties of a police officer, and disability "as a result of his activities in the discharge of his official duties," and provided an increased allowance for the latter. Virginia Code, 1950, sections 51-121 and 51-122.

In 1942, chapter 284 of Acts 1930, as theretofore amended, was further amended and reenacted, so as to make its provisions applicable with respect to policemen and firemen injured prior to the effective date of the 1930 Act. Acts 1942, chapter 38, page 37.

In the same year, (Acts 1942, chapter 151, page 371) the General Assembly authorized any city having a population of not less than 100,000 nor more than 170,000, such as Norfolk, to establish a system of pensions, retirement allowances and death benefits for its officers and employees. Under that Act, the city of Norfolk enacted its general retirement system known as the "Employees Retirement System of the City of Norfolk." Norfolk City Code of 1944, Article II, chapter 3.

In 1948, the legislature authorized appropriations by any county, city or town "for the relief of any of their police officers, firemen, officials, and other employees who suffer injury as defined in the Virginia Workmen's Compensation Act, whether such injury was suffered before or after the effective date of this section." Acts 1948, page 95; 1948 Cumulative Supplement to the Virginia Code of 1942, (Michie); Virginia Code, 1950, section 15-24.1; Virginia Code, 1950, section 27-38.

In 1942, the General Assembly of Virginia, in an Act to establish a system of personnel administration for the Commonwealth, expressly provided that persons who had left the service of the Commonwealth for service in any of the armed forces of the United States, "as well as persons who hereafter leave the service of the Commonwealth for service in such armed forces, shall be entitled to be restored to such positions upon the termination of their service with the armed forces, * * *." Acts 1942, page 563, et seq.; Virginia Code, 1950, section 2-79.

The foregoing enactments have been cited as reflecting the growth and development of this character of legislation and

the public policy of the State. The legislation was for the beneficent purpose of providing relief in the nature of disability insurance to employees in the public service. Having for its purpose a humanitarian end, it is to be liberally construed.

In 1940, the Congress of the United States set forth the rights of persons in wartime military or naval service to reinstatement in their former positions of employment at the expiration of such service. Selective Training and Service Act of 1940. U. S. C. A., Title 50, App., section 308.

See also Army Reserve and Retired Personnel Service Law of 1940, U. S. C. A., Title 50, App., section 403 (c).

Section 40 of the 1942 ordinance was obviously enacted to replace and enlarge section 3 of the 1924 ordinance, heretofore cited, and to increase the compensation for total disability resulting from an accident occurring in the actual performance of an employee's duty.

At the risk of repetition, we recapitulate the facts. At the time of the effective date of section 40, January 1, 1942, Key was on active duty as a police officer, a member in the service of the city. The section was in full force and effect when he entered the service of the United States Coast Guard in August, 1942, when he returned to the service of the city in November, 1945, and at the time of his retirement on September 1, 1948. Key was "totally and permanently incapacitated for duty as the natural and proximate result of an accident (or accidents) occurring while in the actual performance of duty at some definite time and place, without wilful negligence on his part." He duly applied for the accidental disability retirement allowance, based upon his service and the accidental injuries incurred therein. The Medical Board made the prescribed medical examination and certified, in the language of the ordinance, his total disability for the further performance of duty.

Section 40 contains no provision or limitation with regard to length of service, or the date of the accident which produces disability, save that the accident must occur "in the actual performance of duty." There is nothing in its language which provides that the injuries producing disability must have occurred after January 1, 1942, or any other time. It is not the date of the infliction of injuries, but the manner of the accident and the resulting incapacity which determines the right to accidental disability retirement allowance. The obligation of the city did

not attach, nor the right of Key to an allowance come into being until his disability accrued. The amount to which he was entitled could not be fixed without a determination of the cause of his injuries, his condition, and the necessity for his retirement.

The facts show a full compliance with the specific requirements of section 40, and bring the claim of Key squarely within its provisions. The facts do not require that the provisions of section 40 be given retroactive effect to justify the granting of its benefits to the claimant.

What we have already said is equally applicable to the second contention of the city. Key's disability resulted from an accident occurring while he was in the actual performance of duty as an employee of the city. At the time of his disability he was an employee of the city. These were the two essential requirements of the ordinance. Every one of its conditions have been fully met.

When Key entered the Coast Guard in August, 1942, he had no right to a pension. He did not thereby lose a right which did not, and could not, exist, until he became disabled. Whether or not he re-entered the service of the city in 1945, as a new employee, the facts attending the cause of his disability qualified him to receive the benefits provided by section 40. Any other conclusion would ignore both the facts of the case and the language of the ordinance, as well as the object and purpose of the type of legislation reviewed.

For the foregoing reasons we are of opinion that the trial court has correctly interpreted the ordinance in question. Its decree is affirmed.

*Affirmed.*