# CIRCUIT COURT OF THE CITY OF RICHMOND

James V. Vitale

v.

City of Richmond

### April 20, 1984

### Case No. LG 1275

By JUDGE MARVIN F. COLE

The complainant (Vitale) was employed as a police officer with the City of Richmond on May 7, 1956. On February 19, 1980, he was chasing a suspect into a house and fell, which caused injury to his back. He subsequently had a laminectomy performed in August of 1980. He tried returning to work in February of 1981 until December of 1981, but finally had to stop due to persistent back pain.

Vitale was marked off duty and placed on injury leave on November 15, 1981, and continued in that status until the effective date of his retirement. He was a member of the Richmond Supplemental Retirement System at all times relevant to this case.

Vitale filed an application with the Board of Trustees, Richmond Supplemental Retirement System dated December 2, 1981, in which he stated that he had satisfied the requirements of Chapter 23 of the Code of the City of Richmond governing administration of the retirement system, and gave written notification

of his retirement for disability effective April 3, 1982.

On January 11, 1982, the City amended § 23-38 of the Code, effective January 31, 1982, the effect of which amendment was to modify the formula for determining the retirement system's service related disability benefits to include among other things an offset for payments of compensation awarded under the Virginia Workmen's Compensation Act.

The Board of Trustees approved the application of Vitale on March 24, 1982, with an effective date for commencement of benefits on April 3, 1982.

This case is now before the court on a motion for summary judgment based upon a stipulation of facts.

Vitale contends that the City cannot impair or destroy vested rights in property, and that since his rights to the disability benefits vested prior to January 31, 1982, Vitale is not subject to the setoff for workmen's compensation payments. The question therefore is when did the right to the disability benefits vest? Vitale claims that rights to the disability retirement allowance vested upon the occurrence of his incapacity.

Dr. Kenneth I. Kiluk reported in a letter dated December 10, 1981, received by the Retirement System on December 15, 1981, that Vitale was at that time permanently and totally incapacitated from performing his duties as a police officer.

Dr. Franklin P. Watkins examined Vitale on December 31, 1981, and reported on this examination in a letter dated January 13, 1982, and received by the Retirement System on January 20, 1982. Thereafter he completed form RSRS 11 - Medical Examination Report, which form was dated February 4, 1982, and received on February 10, 1982. Dr. Watkins reported that Vitale was completely incapacitated by reason of sickness or injury, and indeed this is a fact not disputed in the case.

Dr. William R. Higgins, Jr., indicated the same thing in a report dated February 12, 1982, and received by the Retirement System on February 24, 1982.

In the case of Nicely v. Bank of Virginia Trust Co., 221 Va. 1084 (1981), the Supreme Court made some statements that are applicable to this case. This case involved a plan of East Coast Oil Corporation established by virtue of a written contract with the trustee. Under the terms of the plan, which had retirement, disability and death benefits, only the company made contributions to the profit-sharing fund. The Supreme Court stated that they had not had occasion to construe similar provisions of such a retirement and profit-sharing plan, there was ample authority from other jurisdictions on the subject.

The Supreme Court stated the following:

The better reasoned decisions proceed on the theory that a noncontributing plan like this is in the nature of a unilateral contract. The company makes an offer to its salaried employees in the form of a promise to pay benefits upon the fulfillment of certain conditions by them or upon the happening of certain events, such as retirement after a specified term of service or sustaining a permanent disability (citation omitted). Full performance by the employee constitutes acceptance of the offer and his previously inchoate rights to receive payments under the plan vest and become legally enforceable (citations omitted).

The Supreme Court then continued as follows:

But in establishing the plan, the employer may include certain requirements in the offer with which the employee must comply in order to create an acceptance; the opinion of a competent physician selected by the

employer that the employee is permanently disabled is such a requirement.

In the Nicely case the plan provided that the decision of the Committee appointed to administer the plan "in all cases shall be final." The court stated that under such circumstances the administrator did not employ complete and unbridled discretion. But, the courts will not interfere with the decision denying benefits based upon failure to meet the requirements for such a medical opinion unless there is clear and convincing evidence against the defendant of bad faith, fraud, mistake, or arbitrary action, thus excusing the employee from fulfilling the requirement.

Clearly, in this case the City made an offer to its employees, including Vitale, in the form of a promise to pay disability payments upon the fulfillment of certain conditions. The question involved in this case is whether under the facts the employee Vitale has accepted the offer by full performance of all of the conditions of the offeror in order to convert his inchoate rights into vested rights.

Let us now look at the plan to determine what constitutes "full performance" by the employee which will constitute acceptance of the offer of the City. The plan provides:

(1) Upon written notification to the Board made by the member setting forth at what time the retirement is to become effective.

(2) Such effective date shall be after the termination of pay status but shall not be more than 90 days prior to the filing of such notice.

(3) The medical examiners shall have certified that the member has been completely incapacitated by reason of sickness or injury contracted after his date of employment and at the effective date the member is com-

pletely incapacitated from performing the duties required of his position with the City.

The general rule is stated in McQuillin, Municipal Corporations, § 12.133a (3rd ed.) as follows:

The right to a pension or to a specified amount as a pension becomes vested and cannot be taken away or impaired after the happening of the event which is fixed as the occasion for the allowance.

In the present case the event fixed as the occasion for the allowance is actual retirement for disability and the performance of all of the conditions established under the terms of the offer to the employee. This all occurred after January 31, 1982, the effective date of the change in the ordinance.

I, therefore, am of the opinion that Vitale is bound by the terms of the ordinance as amended effective January 31, 1982.