EVELYN C. PITTS

V.

CITY OF RICHMOND

Record No. 841739

BETTY J. VIA

V.

CITY OF RICHMOND

Record No. 850444

March 4, 1988

Present: All the Justices

*Joseph E. Blackburn, Jr. (White, Blackburn & Conte, P.C.*, on brief), for appellant. (Record No. 841739)

*Henry M. Jarvis, Senior Assistant City Attorney*, for appellee. (Record No. 841739)

*Gregory S. Hooe (James E. Moore; Staples, Greenberg, Minardi & Kessler*, P.C., on brief), for appellant. (Record No. 850444)

*Henry M. Jarvis, Senior Assistant City Attorney (Drew St.J. Carneal, City Attorney,* on brief), for appellee. (Record No. 850444)

POFF, J., delivered the opinion of the Court.

In these appeals, we consider whether the City of Richmond (the City) wrongfully denied certain benefits under the Richmond Supplemental Retirement System (the System) to the widows of two firefighters who retired for work-related disabilities.

William F. Pitts, born February 16, 1920, was employed as a firefighter by the City beginning January 1, 1946. He retired for occupational disability due to heart disease December 1, 1978 at the age of 58. He died August 28, 1980 at the age of 60 years and 6 months. Mr. Pitts is survived by his wife, Evelyn C. Pitts.

Raymond S. Via also worked as a firefighter for the City. Mr. Via was born September 19, 1930 and was employed by the City from March 7, 1959 until his disability retirement August 4, 1979 at the age of 48. Mr. Via died October 26, 1982 at the age of 52. He is survived by his wife Betty J. Via.

Both Mrs. Pitts and Mrs. Via made application to the City for payment of all benefits allowable under the System. The City determined that each was entitled to a $1000 death benefit. In Mrs. Via's case, the City determined that she also was entitled to $639.36 as the balance of Mr. Via's monthly disability retirement allowance unpaid at the time of his death. The City concluded that neither widow was entitled to survivor's benefits in the form of a retirement allowance.

Mrs. Pitts and Mrs. Via each filed a motion for judgment against the City seeking declaratory relief. In each case, the trial court declared that the City had paid the entire amount of benefits owing and entered summary judgment in favor of the City. We granted both Mrs. Pitts and Mrs. Via appeals from the judgments below, and because similar legal issues are involved, we have consolidated their cases for review.

The System has undergone numerous changes since its inception. It originated in a 1944 ordinance adopted by the Council of the City of Richmond (City Council) "to establish a Contributory Retirement System for injured, retired or superannuated officers and employees of the City, including members of the Police and Fire Departments". By Ordinance No. 52-189-175, enacted in

1952, City Council abolished the Contributory Retirement System and, by Ordinance No. 52-192-178, replaced it with the "Richmond Supplemental Retirement System", codified as chapter 59 of the 1937 City code. The System was recodified as chapter 28 of the 1957 City code and later became chapter 31 of the code of 1963. By an ordinance enacted in 1966 "making changes in and continuing the . . . System", which changes "shall not be construed to abolish the system", City Council repealed chapter 31, replaced it with chapter 31.1, and converted the System to a noncontributory plan. Chapter 31.1 became Chapter 33 of the 1968 City code, and in 1974, City Council enacted an ordinance that made further changes in and continued the System as chapter 33.1. That ordinance repealed chapter 33 "so as to eliminate and prevent any conflict with changes made in the system." After further revisions, the System was recodified as chapter 23 of the 1975 City code.

Although the parties rely on different provisions, their basic position is that they are entitled to benefits allowable under any chapter in effect during any period of their husbands' membership in the System, even though such chapter may have been modified or repealed by a later chapter. In essence, they assert that the right to receive benefits under a particular provision cannot be repealed or impaired by a later provision. They reason that a retirement system is in the nature of a unilateral contract, and once an employee performs under the contract, any rights under the contract vest and cannot be divested absent mutual assent.

The City's position is that no rights had vested in Mr. Pitts or Mr. Via when the City amended the System prior to their retirement for disability. Specifically, the City contends that, although a retirement system may have some characteristics of a unilateral contract, neither Mr. Pitts nor Mr. Via accepted the contract by performance of all conditions precedent.

■ We considered the nature of retirement plans in *Nicely* v. *Bank of Virginia Trust Co.*, 221 Va. 1084, 277 S.E.2d 209 (1981). Reviewing authority from other jurisdictions, we said in that case:

> The better-reasoned decisions proceed on the theory that a noncontributory plan like this is in the nature of a unilateral contract. The company makes an offer to its salaried employees in the form of a promise to pay benefits upon the fulfill-

ment of certain conditions by them or upon the happening of certain events, such as retirement after a specified term of service or sustaining a permanent disability. Full perform- ance by the employee constitutes acceptance of the offer, and his previously inchoate rights to receive payments under the plan vest and become legally enforceable.

But in establishing the plan, the employer may include certain requirements in the offer with which the employee must comply in order to create an acceptance . . . .

*Id.* at 1089, 277 S.E.2d at 211-12 (citations omitted). In *Nicely*, we upheld the denial of retirement benefits to an employee who failed to submit adequate medical documentation of an occupa- tional disability on the ground that submission of such proof was a condition to acceptance of the unilateral contract. *Id.* at 1089-91, 277 S.E.2d at 211-13.

As in *Nicely*, the retirement plan established by City Council contains a promise to pay benefits upon the happening of certain events and the performance of all conditions precedent. Prior to acceptance by full performance, an employee has no vested rights in the System, and the City is free to modify its pro- visions. *Id.* In terms of the present cases, unless the System specif- ically provides otherwise, neither Mrs. Pitts nor Mrs. Via can lay claim to benefits through ordinances no longer in effect at the time their husbands satisfied all prerequisites to payment under the System. *See Norfolk* v. *Key*, 192 Va. 694, 700-01, 66 S.E.2d 479, 482-83 (1951) (employee is entitled to benefits available at time of qualifying for disability retirement allowance and not those available under former law when accident occurred).

Since its inception, the System has provided benefits of three main types: service retirement, disability retirement, and death benefits. The City's promise to pay these benefits always has been conditioned upon the happening of an event and upon a specified term of service. To receive disability retirement benefits, for ex- ample, a member of the System must have been certified by a medical examiner to be completely incapacitated and, in addition, must have completed five years of creditable service or have had a disability that was compensable under the Virginia Workers'

Compensation Act.[1] Richmond City Code §§ 23-37 (1975), 33-39 (1968); *cf. id.* §§ 31-47 (1963), 28-46 (1957).

■ Both Mr. Pitts and Mr. Via retired due to work-related disabilities. Mr. Pitts had heart disease, and Mr. Via incurred a disability (unnamed in the record) that was covered by workers' compensation. Until the dates of certification of their respective disabilities in 1978 and 1979, however, neither Mr. Pitts nor Mr. Via had satisfied all of the City's conditions precedent to payment of disability retirement benefits, and therefore, neither had vested rights in those benefits.

Nor did either have vested rights in *service* retirement benefits prior to the dates of their disability retirements. Mr. Pitts had reached early retirement age in 1975, *see id.* §§ 23-3, -29 (1975) (age 50), 33-30 (1968) (age 55), but no rights to service retirement benefits vested in either Mr. Pitts or Mr. Via because neither satisfied the *event requirement* to acceptance of the System's promise to pay; although both had met the five-year creditable service requirement for early retirement, *see id.* §§ 23-29 (1975) (5 years), 33-30 (1968) (15 years), 31-38 (1963) (30 years), 28-37 (1957) (30 years), neither employee actually retired for service after having reached either early retirement age or normal retirement age, *see id.* §§ 23-32(a) (1975), 33-33 (1968), 31-41(a) (1963), 28-40 (1957).

Mrs. Pitts and Mrs. Via contend that City Council, in reserving the right to alter, amend, or repeal provisions of the System, intended that any such actions would operate prospectively only and would not affect the rights of existing members. They cite to section 28-6(b) of the 1957 City code and section 31-6(b) of the code of 1963, which are identical in substance. Former section 28-6(b) provided as follows:

> If the council repeals the provisions of this chapter, the board shall continue to administer the system in accordance with the provisions of this chapter for the sole benefit of the then members, any beneficiaries then receiving retirement allowances, and any future persons entitled to receive benefits

---

[1] An exception applicable to firefighters eliminates the five-year service requirement for employees disabled as a result of work-related respiratory or heart disease. Richmond City Code § 23-37(b)(2) (1975).

under one of the options provided for in this chapter who are designated by any of such members.

Under this provision, the appellants argue, City Council's actions in repealing a chapter would not affect their husbands' rights to claim benefits under the repealed chapter. Pursuing this view, they assert that Mr. Pitts and Mr. Via were members of the distinct sub-systems of chapters 28, 31, 31.1, 33, 33.1, and 23, all contained within the System. Accordingly, Mrs. Pitts and Mrs. Via argue, their entitlement to benefits is to be determined under the most favorable of these sub-systems and not under the chapter in effect at the time their husbands retired for disability.

■ We disagree. When read in context with other provisions of the System, section 28-6(b) (later, section 23-9(b) of the 1975 City code) was more limited in scope than may appear at first reading. Subsection (a), for example, authorized not only the repeal of provisions of the System but also the alteration or amendment of those provisions or the "application thereof to any person".[2] Yet, it was only when the provisions were repealed that subsection (b) operated to require the board of trustees to "continue to administer the system in accordance with the provisions of this chapter" for the existing members; the board was not required to continue to administer the System in accordance with provisions City Council had altered or amended.

Subsection (c) of section 28-6 detailed the order of allocation of assets of the System "[i]n the event of repeal as provided in subsection (b)". Subsection (d) of that section provided in pertinent part:

> The allocation of assets of the system provided for in subsection (c) of this section shall be carried out through the payment by the board of the benefits provided for in this section as they become due, or by the transfer of such assets to any retirement system replacing this system; provided, that

---

[2] Subsection (a) of section 28-6 provided:
  The council reserves the right to alter, amend or repeal any provision of this chapter or any application thereof to any person; provided, however, that the amount of benefits which at the time of any such alteration, amendment or repeal shall have accrued to the extent provided under subsection (c) of this section for the members or beneficiaries shall not be affected thereby.

such vesting of benefits as provided by this section shall be fully maintained under such new retirement system.

■ Reading these four subsections of section 28-6 together, we believe that City Council intended by these provisions to vest in existing members the right to *a* retirement system, while retaining a right to vary the System's provisions and its application to current members. In repealing old chapters and enacting new ones, City Council has not overstepped the powers reserved in section 28-6 and its successors. Each time City Council repealed and replaced a chapter since Mr. Pitts and Mr. Via had been members of the System, the new chapter either continued the establishing provision from the 1952 ordinance, *id.* §§ 31-2 (1963), 28-2 (1957), or provided as follows:

> The Richmond Supplemental Retirement System, established by Ordinance No. 52-192-178 . . . as heretofore amended, is continued, subject to such changes therein as are set out in the provisions of this article [division].

*Id.* §§ 23-4 (1975), 33-2 (1968). A provision added in 1966 and repeated in the 1974 revisions stated City Council's intent as follows:

> It is the intent and purpose of the city council in adopting this division to make certain changes in and to continue the Richmond Supplemental Retirement System. The repeal of [the replaced chapter] . . . and all amendments thereof shall not be construed to abolish the system . . . .

*Id.* §§ 23-5 (1975), 33-3 (1968).
■ In our view, the retirement system that existed when Mr. Pitts and Mr. Via retired for disability was the same system that had been in place since 1952. City Council never has repealed the *System*, but instead has continued the System through the replacement or recodification of old chapters. Accordingly, neither subsection (b) of section 28-6 nor any other provision of chapter 28 or its successors operates to vest in members the right to benefits identifiable under the System at any point prior to the time they had complied with all prerequisites to payment.

Within the categories of benefits relating to service and disability retirement, the System defines options through which an em-

ployee may elect to receive alternative retirement benefits. Both Mrs. Pitts and Mrs. Via claim benefits under one of these options, namely the joint and last survivor benefits option. In certain cases, a member's widow will receive joint and last survivor benefits even when the member dies without having elected the option. Mrs. Pitts claims she is entitled to a widow's retirement allowance under this provision as well.

■ Specifically, Mrs. Pitts bases her claims on section 33-49(b) of the 1968 City code;[3] Mrs. Via bases her claim on section 28-59 of the 1957 City code and section 31-61 of the code of 1963.[4] Qualification for benefits under these provisions was less restricted than under corresponding provisions in effect on the dates Mr.

[3] Section 33-49(b) of the 1968 City code invoked by Mrs. Pitts provided, in pertinent part, as follows:

Should a member retire for disability . . . after he has satisfied the age and service requirements for early service retirement . . . and then die prior to the attainment of his sixty-fifth birthday, the surviving widow or widower, if any, shall receive a retirement allowance payable monthly for life equal to and commencing at the same date as the allowance that would have been payable to the member . . . had he remained in service and retired under the provisions [for early service retirement] . . . after having elected to have his allowance paid under the full joint and last survivor option . . . with his spouse designated as contingent beneficiary.

In 1975, normal retirement age for firefighters was lowered to age 60 from 65, Richmond City Code § 23-3 (1975), and the above provision was amended to reflect this change, id. § 23-45. Accordingly, when rights to disability benefits vested in Mr. Pitts in 1978, the System promised survivor benefits to Mr. Pitts' widow only if he died prior to age 60 without having made an election of joint and last survivor benefits.

[4] Section 28-59 of the 1957 City code and section 31-61 of the 1963 code each provided that a member could elect joint and last survivor benefits, but did not detail when such an election could be made or when it would be effective. Mrs. Via, therefore, argues that the option could be elected at any time and would be effective upon retirement. Her argument is buttressed by language in section 28-57 of the 1957 City code and section 31-59 of the code of 1963, both of which provided that:

Each member shall have the right at any time, not subsequent to the later of the effective date of the member's retirement or the date of the written notification to the board of the retirement of the member, to elect to have his retirement allowance payable under any one of the options set forth in sections 28-58 to 28-61 [31-60 to 31-63] of this Code in lieu of the retirement allowance otherwise payable to him upon retirement under any of the provisions of this chapter [article].

Although a provision similar to the above provision also was included in the System on the date that Mr. Via retired for disability, the joint and last survivor benefits provisions were amended to include certain restrictions on the exercise of the option. Specifically, section 23-42(b) of the 1975 City code provided that:

[I]n the case of a member who retires for disability . . . the election of this option shall not become effective, and need not be made, until he attains the date that would have been his normal retirement date had he remained in service until then.

Pitts and Mr. Via retired for disability. As we have said, however, neither Mrs. Pitts nor Mrs. Via is entitled to claim benefits under an ordinance not in effect at the time her husband's inchoate rights to benefits under the System vested;[5] the husbands' rights were governed by the ordinance in effect at the time they qualified for disability retirement.

On the dates that both Mr. Pitts and Mr. Via retired for disability, to qualify for an optional allowance, an employee had to satisfy conditions above and beyond the event and service duration prerequisites for the standard service or disability retirement allowance. To receive joint and last survivor benefits, an employee who met the qualifications for standard service or disability retirement benefits also had to elect to receive reduced benefits during his lifetime and name a contingent beneficiary.[6] *Id.* § 23-42(b) (1975). A person retiring for disability, in addition, had to survive

[5] Our conclusion respecting ordinances affecting optional benefits is consistent with the intent of City Council as expressed in section 23-52 of the 1975 City code, which provided, in pertinent part, as follows:

> The adoption of the ordinance from which this division is derived shall neither alter nor modify any retirement allowance awarded any member prior to July 1, 1974, nor shall it modify or alter any option which may have been elected by any member prior to July 1, 1974, whether such option pertains to early retirement, deferred retirement or survivor's benefits.

Under this provision, the City is required to continue paying benefits consistent with the repealed chapter to those persons already awarded a retirement allowance. Similarly, the enactment of the new chapter was not intended to change any of the benefits under one of the optional plans for those members who actually had elected one of those plans prior to the effective date of the ordinance. Through the amendments to the System, however, City Council did intend to affect those members who had not yet been awarded a retirement allowance or who had not yet elected an optional retirement plan.

[6] To elect joint and last survivor benefits, a member was required to execute the System's Form 20, entitled "Election of Benefits and Appointment of Beneficiary" and subtitled "Joint and Last Survivor Option". That form stated in relevant part:

> [I]n lieu of the regular retirement allowance . . . [I] do hereby elect . . . to receive a decreased retirement allowance during my lifetime and have a designated fraction thereof, to-wit: ___%, continue to be paid after my death to my herein named contingent beneficiary, during the lifetime of such contingent beneficiary.

In stark contrast with Form 20, Form 18, the form executed by both Mr. Pitts and Mr. Via to name their beneficiaries under the System, was entitled "Election of Benefits and Appointment of Beneficiary" but subtitled "Regular Benefits with Death Benefits after Retirement". That form provided in relevant part:

> I . . . do hereby elect that regular retirement benefits . . . be paid to me . . . .
> I further direct that any portion of my retirement allowance unpaid at my death, or any other benefits allowable . . . be paid to my herein named beneficiary.

until his normal retirement age in order for the election of optional benefits to become operative. *Id.* For a member's widow to receive a widow's retirement allowance equal to full joint and last survivor benefits when the member had not made such an election, it was necessary that the member had reached early retirement age while still in service and had died prior to attaining normal retirement age. *Id.* § 23-45(b) (1975). Normal retirement age for a firefighter on the dates that Mr. Pitts and Mr. Via retired for disability was age 60. *Id.* § 23-3 (1975).

■ Neither employee met the conditions for acceptance of the joint and last survivor benefits package or the widow's retirement allowance. Mr. Pitts lived until normal retirement age, but received full disability benefits until his death and failed to make an election or name a contingent beneficiary; he received full benefits and expressed no intent to decrease those benefits during his lifetime to provide for an unnamed contingent beneficiary. Although Mrs. Via has asserted that Mr. Via was denied an opportunity to make an election of reduced lifetime benefits and to name a contingent beneficiary, because Mr. Via died before he reached normal retirement age, any such election would not have been effective to secure joint and last survivor rights for his beneficiary.[7] Also, because Mr. Via retired for disability before he attained early retirement age, Mrs. Via was not entitled to the widow's retirement allowance.

Having found that neither Mr. Pitts nor Mr. Via effectively had elected the joint and last survivor option and that neither Mrs. Pitts nor Mrs. Via was entitled to any benefits other than those awarded by the City, we will affirm the judgments in both cases.

*Record No. 841739 - Affirmed.*
*Record No. 850444 - Affirmed.*

---

[7] Mrs. Via also argues on appeal that the System arbitrarily "discriminates against employees who retire for disability prior to reaching normal retirement age by limiting the effective date of an election under the joint and last survivor option and by denying widow's benefits to their surviving spouse." She argues that this provision, among others, operates to discourage members from seeking workers' compensation and retiring for disability. We cannot tell from the record before us whether this issue was argued by the parties and considered by the trial court, and we will not consider it on appeal. Rule 5:25.