# CIRCUIT COURT OF THE CITY OF ROANOKE

Michael Fletcher

    v.

Commonwealth of Virginia et al.

Case No. CL10-921

By Judge Jonathan M. Apgar

August 11, 2010

On July 27, 2010, Defendants Commonwealth of Virginia and Department of the Treasury (sometimes collectively referred to as "Commonwealth") were heard on their plea of immunity and demurrer to Plaintiff Michael Fletcher's action for declaratory judgment of his right to defense and indemnification under the Commonwealth's Risk Management Plan (Plan). At the conclusion of the hearing, the Court took the plea and demurrer under advisement. Having considered the pleadings, arguments of counsel, and the applicable law, the Court is now prepared to rule. For the reasons that follow, the plea is overruled, and the demurrer is sustained in part and overruled in part.

## I. *Background*

Before his retirement, Fletcher worked as a correctional officer at the Commonwealth's Botetourt correctional facility. He and the previous warden of that facility, J. D. Terry, are currently being sued in federal court by a former inmate who claims that, with Terry's knowledge, Fletcher "assaulted and battered and tortured and abused him and imposed cruel and unusual punishment in violation of the . . . constitutions and laws of the United States and the Commonwealth of Virginia." Pl.'s Compl., Ex. B, ¶ 12. The federal case is set for trial in December 2010.

When Fletcher became aware of the inmate's suit, he notified the Treasury's Division of Risk Management (DRM) and requested defense and indemnification pursuant to Va. Code § 2.2-1837. That section, in relevant part, states:

> [DRM] shall establish a risk management plan . . . to provide:
>     1. Protection against liability imposed by law for damages resulting from any claim:
>         a. Made against any state . . . employee for acts or omissions of any nature while acting in an authorized governmental or proprietary capacity and in the course and scope of employment or authorization. . . .
>     3. For the payment of attorney's fees and expenses incurred in defending such persons and entities concerning any claim that . . . arises from their governmental employment or authorization . . . where [DRM] is informed by the Attorney General's office that it will not provide a defense due to a conflict or other appropriate reason. . . .

Va. Code Ann. § 2.2-1837(A)(1), (3) (2010).

In a letter dated May 4, 2010, DRM denied Fletcher's request, explaining that it "believe[s] the conduct attributed to [him] in [the inmate's suit] was outside the course and scope of his employment and violated one or more provisions of the Plan." Pl.'s Compl., Ex. D. Nevertheless, it expressed that it was "agreeable to withholding a final decision regarding coverage for a judgment against Mr. Fletcher or settlement on his behalf pending [its] review of additional facts . . . as they become available." *Id.* In conclusion, DRM stated that it had no authority to appoint Fletcher counsel and that it had not yet been informed whether the Attorney General's office would provide him a defense.

Two weeks later, on May 17, Fletcher filed this action, seeking a declaration that, under the Plan, the Commonwealth had a duty to defend and indemnify him in the inmate's suit. In response, the Commonwealth filed the plea and demurrer, making a number of arguments why Fletcher's action should be dismissed with prejudice.

## II. *Discussion*

### A. *Plea of Immunity*

The Commonwealth advances three principal arguments in support of its plea. First, it claims that Fletcher's action is barred by the doctrine of sovereign immunity. In support of this assertion, it cites two Supreme Court

of Virginia decisions, *Afzall v. Commonwealth*, 273 Va. 226, 639 S.E.2d 279 (2007), and *Virginia Board of Medicine v. Virginia Physical Therapy Association*, 245 Va. 125, 427 S.E.2d 183 (1993), for the proposition that it is immune from declaratory judgment actions like this unless the General Assembly has waived sovereign immunity in explicit statutory language. As neither the Code section authorizing the Plan (§ 2.2-1837) nor the Code sections addressing declaratory and injunctive relief (§§ 8.01-184, 8.01-186, and 8.01-620) contain such language, the Commonwealth concludes that its immunity has not been waived and that, as a result, this action is barred.

Next, the Commonwealth contends that, even if its immunity has been waived, that of the Treasury has not. In making this argument, the Commonwealth relies on *Rector and Visitors of the Univ. of Va. v. Carter*, 267 Va. 242, 591 S.E.2d 76 (2004). In that case, the Supreme Court of Virginia explained that, even when a statute waives the Commonwealth's immunity, it does not also waive the immunity of the Commonwealth's agencies unless the statute contains express language to that effect. Hence, the Commonwealth maintains that, because Fletcher has failed to identify any explicit statutory language waiving the Treasury's immunity here, this action against the agency is barred.

Finally, the Commonwealth argues that it is entitled to legislative immunity here, because "officials at the Treasury drafted and administer the Plan under 'the legislative delegation and direction' of the General Assembly pursuant to Va. Code § 2.2-1837." Defs.' Br. 11. To support this contention, the Commonwealth cites, among other cases, *Bogan v. Scott-Harris*, 523 U.S. 44, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998). There, the Supreme Court of the United States reiterated that "officials outside of the legislative branch are entitled to legislative immunity when they perform legislative functions," such as introducing a bill or signing into law an ordinance. *Id.* at 55 (citation omitted).

In response to the Commonwealth's arguments, Fletcher asserts that, as this action sounds in contract and not tort, the doctrines of sovereign and legislative immunity do not apply here. Even if they did, he continues, they would not bar this action because the Commonwealth has waived them in Section X of the Plan, which reads:

> No action shall lie against the Plan or the Commonwealth of Virginia or any agency thereof, unless as a condition precedent thereto the covered organization or individual shall have fully complied with all terms, conditions, and procedures of the Plan and until the amount of any obligation to pay shall have been finally determined either by judgment or written agreement.

Pl.'s Compl., Ex. A, § 10 (hereinafter Plan).

In this section, Fletcher claims, "the Commonwealth consents to suit and thereby vests beneficiaries with standing to bring enforcement actions." Pl.'s Br. 6.

The Court agrees with Fletcher that the doctrines of sovereign and legislative immunity are inapplicable here. While it is true that "[t]he doctrine of sovereign immunity is alive and well in Virginia, as a defense to actions in tort," the Supreme Court of Virginia "ha[s] never extended that defense to actions based upon valid contracts entered into by duly authorized agents of the government." *Wiecking v. Allied Med. Supply Corp.*, 239 Va. 548, 551, 391 S.E.2d 258, 260 (1990) (internal quotation marks and citation omitted). This is because "to hold that the state may enter into a valid contract and yet retain the power to avoid its obligation would entail an obvious contradiction; neither the state nor the contractor can be bound, yet not bound, by a single contract." *Id.* at 552, 391 S.E.2d at 260 (citing *Kinsey Constr. Co. v. South Carolina Dep't Mental Health*, 272 S.C. 168, 172, 249 S.E.2d 900, 903 (1978)).

The Plan, as Fletcher rightly contends, "is in the nature of a unilateral contract." Pl.'s Br. 5 (quoting *Pitts v. City of Richmond*, 235 Va. 16, 19, 366 S.E.2d 56, 58 (1988)). When he began his employment at the Botetourt correctional facility, the Commonwealth made him an offer in the form of a promise to defend and indemnify him in the event that he had "an obligation to pay by reason of liability imposed by law for damages resulting from any claim arising out of acts or omissions of any nature while acting in an authorized governmental or proprietary capacity and in the course and scope of employment or authorization." Plan, § I.A. He accepted that offer and provided the necessary consideration to bind the Commonwealth through performing his duties as a correctional officer. See *Twohy v. Harris*, 194 Va. 69, 81, 72 S.E.2d 329, 335 (1952). Hence, "his previously inchoate right[]" to defense and indemnification "under the [P]lan vest[ed] and became legally enforceable." *Pitts*, 235 Va. at 19, 366 S.E.2d at 58 (quoting *Nicely v. Bank of Va. Trust Co.*, 221 Va. 1084, 1089, 277 S.E.2d 209, 212 (1981)).

Thus, since Fletcher is suing to enforce a binding unilateral contract, neither sovereign nor legislative immunity shields the Commonwealth from this action. This conclusion is further supported by a recent Supreme Court of Virginia case in which a covered party was permitted to sue the Commonwealth for failure to defend and indemnify under a similar DRM plan. See *School Bd. of Newport News v. Commonwealth*, 279 Va. 460, 462, 689 S.E.2d 731, 732-33 (2010). Accordingly, the Court overrules the plea.

B. *Demurrer*

The function of a demurrer is to test the legal sufficiency of the claims stated in the challenged complaint. *Thompson v. Skate Am., Inc.*,

261 Va. 121, 128, 540 S.E.2d 123, 126 (2001). Although a demurrer does not admit the correctness of the complaint's conclusions of law, it does "admit[] the truth of all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred." *Id.*, 540 S.E.2d at 126. Therefore, when considering a demurrer, "the sole question to be decided by the trial court is whether the facts thus pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against the defendant." *Id.*, 540 S.E.2d at 126-27.

With these principles in mind, the Court considers whether the factual allegations in Fletcher's complaint are, as a matter of law, sufficient to state a claim for defense and indemnification against the Commonwealth under the Plan.

The Commonwealth makes three major arguments in support of its demurrer. First, relying on *Finn v. Virginia Retirement System*, 259 Va. 144, 524 S.E.2d 125 (2000), it contends that Va. Code § 2.2-1837, which authorizes the Plan, does not create a private right of action to defense and indemnification, and thus Fletcher's action must be dismissed with prejudice. Responding, Fletcher submits that the Commonwealth's reading of *Finn* is incorrect and asserts that case law supports his position. Pl.'s Br. 8. The Court agrees with Fletcher.

In *Finn*, a former trustee of the Virginia Retirement System filed a complaint seeking indemnification from the Commonwealth under Va. Code § 2.2-1837's predecessor, § 2.1-526.8, for costs that he incurred in defense of criminal investigations arising out of his service as a trustee. The Commonwealth and the other defendants (collectively, "Commonwealth") responded with demurrers. The circuit court sustained the demurrers, and the trustee appealed to the Supreme Court of Virginia.

On appeal, the trustee argued that the circuit court erred in sustaining the demurrers because "Code § 2.1-526.8 provides a right of indemnification to officials of the Commonwealth who successfully defend false criminal allegations arising out of [their] official duties." *Finn*, 259 Va. at 149, 524 S.E.2d at 128 (internal quotation marks omitted; alteration in original). In response, the Commonwealth claimed that "Code § 2.1-526.8 does not create a statutory right for reimbursement but, rather, directs [DRM] to establish an insurance plan." *Id.*, 524 S.E.2d at 128.

The Supreme Court agreed with the Commonwealth. It first noted: "Code § 2.1-526.8 is not self-executing. Rather, the General Assembly, through the enactment of the statute, has directed that [DRM] establish an insurance plan which must be submitted and approved by the Governor before implementation." *Id.* at 150, 524 S.E.2d at 128. Then, it explained:

> Even though the statute describes the scope of insurance coverage and the nature of the insurance coverage to be included within the insurance plan, the statute does not confer

specific rights upon individuals. Rather, any individual who believes that he or she may be entitled to reimbursement must seek payment in accordance with the provisions of any insurance plan that has been established pursuant to Code § 2.1-526.8.

*Id.*, 524 S.E.2d at 128-29.

Thus, it held, "the circuit court properly sustained the Commonwealth's demurrer because Code § 2.1-526.8 does not create a statutory right of reimbursement for [the trustee]." *Id.*, 524 S.E.2d at 129.

*Finn* does not, as the Commonwealth here suggests, stand for the proposition that a covered party cannot sue to enforce his or her vested right to defense and indemnification under the Plan. Rather, it simply holds that he or she "must seek payment in accordance with the provisions of the [Plan]," not what is now Va. Code § 2.2-1837. That is just what Fletcher is doing here. He has brought an action under the provisions of the Plan (in particular Section X) which provide that a covered party can take action against the Commonwealth if he or she has "fully complied with all terms, conditions, and procedures of the Plan. . . ." Plan, § X. *Finn* does not, as the Commonwealth urges, compel the Court to sustain its demurrer and dismiss Fletcher's action with prejudice.

Next, the Commonwealth argues that the Plan is not an insurance policy, and, therefore, the Court should not treat it as such by applying the so-called four-corners rule to determine whether Fletcher has stated a claim for defense and indemnification. But even if the Court should decide to do so, the Commonwealth contends, "the decision to deny a defense to Fletcher and reserve the decision to indemnify were both clearly justified" (Defs.' Br. 17) because the acts of torture and abuse that he allegedly committed against the inmate did not arise out of his "official duties," nor were they "authorized" or "governmental." What is more, the Commonwealth continues, such acts fall outside the scope of the Plan, which, in Section III.E, expressly states that "[a]ny claim arising from "malicious, willful, wanton, or criminal acts" (Plan, § III.E) is excluded from coverage.

Fletcher responds that the Plan should be treated like an insurance policy because that is how the Supreme Court of Virginia recently treated another DRM plan in *School Board of Newport News v. Commonwealth*, 279 Va. 460, 689 S.E.2d 731 (2010). There, the School Board filed a petition in the circuit court against the Commonwealth, "alleging that the Commonwealth breached its contractual duty under [the Virginia Local Government Risk Management Plan ("VaRisk 2 Plan")] to provide coverage for monetary liability arising out of [an] underlying litigation, and breached its contractual duty to defend the School Board against claims." *Id.* at 465, 689 S.E.2d at 734. The circuit court denied the petition, holding that the

underlying litigation was an administrative action and, as a result, excluded by the VaRisk 2 Plan.

On appeal, the Supreme Court reversed. Before concluding that the VaRisk 2 Plan did not exclude the underlying litigation, the Supreme Court noted the applicable standard of review:

> An insurance policy is a contract, and, as in the case of any other contract, the words used are given their ordinary and customary meaning when they are susceptible of such construction. Additionally, in the absence of an ambiguity . . . we must interpret the contract by examining the language explicitly contained therein. [W]here an agreement is complete on its face, [and] is plain and unambiguous in its terms, the court is not at liberty to search for its meaning beyond the instrument itself.

*Id.* at 467-68, 689 S.E.2d at 735 (alterations in original) (quoting *Graphic Arts Mut. Ins. Co. v. C. W. Warthen Co.*, 240 Va. 457, 459, 397 S.E.2d 876, 877 (1990)).

Moreover, in determining that the Commonwealth had a duty to defend the School Board under the VaRisk 2 Plan, the Supreme Court embraced other principles applied to insurance policies. For example, it explained that "[t]he obligation to defend is broader than [the] obligation to pay, and arises whenever the complaint alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy." *Id.* at 472, 689 S.E.2d at 738 (second alteration in original) (quoting *Virginia Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.*, 252 Va. 265, 268, 475 S.E.2d 264, 265 (1966)). Further, it stated:

> [I]f it is doubtful whether the case alleged is covered by the policy, the refusal of the insurer to defend is at its own risk. And, if it be shown subsequently upon development of the facts that the claim is covered by the policy, the insurer necessarily is liable for breach of its covenant to defend.

*Id.*, 689 S.E.2d at 738 (alteration in" original) (quoting *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 189, 397 S.E.2d 100, 102 (1990)).

The Commonwealth attempts to distinguish *Newport News* on the ground that the VaRisk 2 Plan was a bargained-for contract voluntarily entered into and paid by a locality, whereas the Plan here was not. The Court, however, finds this difference of no moment. To begin with, the Plan here is just as binding on the Commonwealth as the VaRisk 2 Plan. As explained above, when Fletcher was hired, the Commonwealth made him an offer in the form of a promise to defend and indemnify him under certain

circumstances, which he accepted, and provided the necessary consideration through his continued employment.

Additionally, the statutes authorizing the two plans, Va. Code §§ 2.2-1837 and 2.2-1839, are very similar. For instance, they both direct DRM to establish, with the approval of the Governor, one or more risk management plans "to provide protection against liability imposed by law for damages . . . resulting from any claim made against" a covered party. Va. Code Ann. §§ 2.2-1837(A)(1), 2.2-1839(A) (2010). Further, the provisions in the plans themselves are very similar. For example, they both state that they "will pay all sums, except as herein limited," that a covered party is obligated to pay by reason of liability imposed by law for damages "arising out of acts or omissions of any nature while acting in an authorized governmental or proprietary capacity and in the course and scope of employment or authorization." *Newport News*, 279 Va. at 465, 689 S.E.2d at 734 (quoting the Coverage section of the VaRisk 2 Plan); Plan, § I.A.

The Court therefore sees no reason why the Plan here should be treated any differently than the VaRisk 2 Plan. Accordingly, in determining whether Fletcher has stated a claim for defense and indemnification under the Plan, the Court applies the same principles the Supreme Court did in *Newport News*.

As noted above, Section I.A of the Plan reads:

> This Plan will pay all sums, except as herein limited, or limited by the Code, that covered parties shall be obligated to pay by reason of liability imposed by law for damages resulting from any claim arising out of acts or omissions of any nature while acting in an authorized governmental or proprietary capacity and in the course and scope of employment or authorization.

Thus, for a claim to fall within the scope of the Plan, it must arise out of acts of any nature committed while the covered party was acting in an authorized governmental capacity and in the course and scope of his or her employment or authorization.

Here, the inmate alleges that, when the acts giving rise to his claims were committed, Fletcher was "act[ing] within his capacity as an employee of the Commonwealth of Virginia. . . ." Pl.'s Compl., Ex. B, ¶ 5. Moreover, the inmate alleges that Terry, Fletcher's superior, knew about those acts and, in effect, authorized or ratified them by allowing Fletcher to continue working as a correctional officer. *See id.* ¶¶ 14, 16, 18, 22-23. Given these allegations, it is plain that the inmate's claims arise out of acts of any nature committed while Fletcher was acting in an authorized governmental capacity and in the course and scope of his employment or authorization and, therefore, fall within the scope of the Plan unless excluded under Section III.E, as the Commonwealth contends.

As noted above, Section III.E provides;

> This Plan does not cover. . . .
>
> Any claim arising from malicious, willful, wanton, or criminal acts. In addition, the Plan will not defend a covered party where a court or other trier of fact has determined that the covered party has engaged in any of the aforementioned acts.

Plan, § III.E.

There can be no doubt that Fletcher's acts, as alleged by the inmate, would constitute "malicious, willful, wanton, or criminal acts." But Section III.E does not, as the Commonwealth argues, state that the Plan will not defend a covered party where he or she is *alleged* to have committed such acts. Rather, it provides that "the Plan will not defend a covered party where a court or trier of fact has *determined* that the covered party has engaged in" such acts. *Id.* (emphasis added). This language necessarily implies that the Plan *will* defend a covered party against allegations of "malicious, willful, wanton, or criminal acts," so long as "no court or trier of fact has determined" that he or she did indeed engage in such acts.

In this case, according to the complaint, "[n]o court or other trier of fact has determined that Fletcher has committed any malicious, willful, wanton, or criminal acts concerning [the inmate] or any other inmate." Pl.'s Compl., ¶ 17. Moreover, in his answer to the inmate's suit, "Fletcher has denied committing any torts or any malicious, willful, wanton, or criminal acts." *Id.* ¶ 18. The Court concludes that Fletcher has stated a claim for defense against the Commonwealth under the Plan. Accordingly, the demurrer to that claim is overruled.

Finally, the Commonwealth argues that, even if the Court holds that Fletcher has stated a claim for defense, it should nonetheless dismiss his claim for indemnification on the ground that it is premature. According to the Commonwealth, that claim will not become ripe for adjudication until DRM has made a final determination regarding coverage, which will not occur until the facts in the inmate's suit have been developed and adjudicated. The Court agrees and apparently so does Fletcher, since in his reply brief he only asks for a declaration of his right to defense under the Plan. Consequently, the demurrer to Fletcher's claim for indemnification is sustained, and it is dismissed without prejudice.

### III. *Conclusion*

For the reasons stated above, the Commonwealth's plea is overruled, and its demurrer is sustained in part and overruled in part.

Mr. Hall is given twenty-one days to file any further responsive pleadings. The case remains on the active docket for such further proceedings as counsel may require.

September 24, 2010

This case is now before the Court on competing requests for summary judgment, as both counsel agree there are no material facts in genuine dispute. As the law relevant to this matter has been previously discussed at length in a prior letter opinion, the Court will not repeat a discussion of the relevant cases and statutes. Determining that the Plaintiff is entitled to judgment, the Court grants the Plaintiff's motion and denies the request for summary judgment by the Defendants.

The Court finds, for the reasons argued by the Plaintiff, that the language of Va. Code Ann. § 2.2-1837(A) requires a defense:

> [T]he Division shall establish a risk management plan . . . to provide: Protection against liability imposed by law for damages resulting from any claim. . . . Made against any state department . . . or employee for acts or omissions of any nature while acting in an authorized governmental or proprietary capacity and in the course and scope of employment or authorization.

In turning to the allegations of the Federal Complaint, wherein Fletcher is among the defendants, while the actions ascribed to him would be intentional unlawful acts, if proven, they occurred during Fletcher's acting in the course and scope of his employment as a prison guard. Further, even using the Commonwealth's argument of interpreting the Risk Management Plan by only the four corners of the Plan and the four corners of the Federal Complaint, the Federal Complaint itself shows that Plaintiff's accuser "repeatedly alleges that Warden Terry, the highest level government official at the Botetourt Correctional Unit, authorized or ratified Officer Fletcher's purportedly abusive treatment of inmates." Plaintiff's Memorandum in Opposition to Defendant's Plea of Immunity and Demurrer at 11, July 20, 2010. If Warden Terry's actions qualify as "authorization" then the plaintiff is entitled to "protection against liability." Further, if the Attorney General still declines representation, as it appears he may, the Plaintiff would be entitled to "payment of attorney's fees and expenses incurred in defending [him]." The Defendants are undertaking the federal representation of Warden Terry.

Therefore, defense of the Plaintiff must be provided by the Office of the Attorney General or provision made for defense by independent counsel. This Court has previously stated that it could see "no reason why the Plan

here should be treated any differently than the VaRisk 2 Plan," a similar insurance plan for local government use. *Supra* (discussing *School Bd. of Newport News v. Commonwealth*, 279 Va. 460, 689 S.E.2d 731 (2010)). Therefore, based on the previous opinion and the VaRisk 2 Plan, the instant Plan, should be interpreted like an insurance contract.

The Commonwealth's argument, that the language of Section III of the Plan is in the disjunctive, is incorrect. When construing an insurance contract, unambiguous terms are given their plain meaning. *Virginia Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75, 677 S.E.2d 299 (2009). However, disputed language is construed "in favor of coverage and against the insurer." *Id.* In this case, the Plan should therefore be interpreted in the light most favorable to the Plaintiff, that is, in the light most likely to result in a Plan-provided defense in the underlying suit.

September 27, 2010

*Final Judgment Order*

The parties appeared by counsel on September 21, 2010, on their cross-motions for summary judgment.

After considering the parties' oral and written arguments and the representations of both counsel that no genuine issue of material fact exists, the Court finds that this matter is ripe for final adjudication.

For the reasons stated by the Court in its letter opinion of August 11, 2010, with respect to the defendants' Demurrer and Plea in Bar to the plaintiff's Complaint, which letter opinion is incorporated by reference into this Final Order, it is adjudged, ordered, and decreed as follows:

1. Plaintiff's Motion for Summary Judgment is granted;

2. Defendants' Cross-Motion for Summary Judgment is denied;

3. Plaintiff, Michael Fletcher, is awarded a Declaratory Judgment that he is entitled to a legal defense from the Commonwealth of Virginia in the federal suit pending against the plaintiff in the United States District Court for the Western District of Virginia, *Thomas W. Jackson v. Michael Fletcher, Correctional Officer, and J. D. Terry, Warden, Botetourt Correctional Center*, Civil Action No. 7:09CV408 (W.D. Va.). Defendants are ordered and enjoined to provide plaintiff with a legal defense in said federal civil action pursuant to the Division of Risk Management Plan and statutes cited in the Court's letter opinion of August 11, 2010;

4. There being nothing left to be done, this matter is stricken from the docket and placed with the ended causes.

The Clerk shall forward attested copies of this Final Judgment Order to counsel of record.