# Udy C. Wood

## v.

# Board of Supervisors of Halifax County, et al.

Record No. 860074

September 23, 1988

Present: All the Justices

*Anthony F. Troy (John K. Burke, Jr.; Mays & Valentine*, on briefs), for appellant.

*S. Vernon Priddy, III (Frank B. Miller, III; Howard P. Anderson, Jr., Commonwealth's Attorney; Sands, Anderson, Marks & Miller*, on brief), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

The issue in this appeal is whether the trial court erred in enjoining the Halifax County School Board (the School Board) from paying certain attorneys' fees incurred by Udy C. Wood, the former division superintendent of schools of Halifax County.

On April 3, 1985, the Board of Supervisors of Halifax County (the Board of Supervisors) filed a bill of complaint in the trial court alleging that the School Board improperly had authorized payment of attorneys' fees on behalf of Wood. The Board of Supervisors sought declaratory and injunctive relief. On motion, Wood was permitted to intervene as a party defendant. Thereafter, nine parents[1] of students enrolled in Halifax County schools petitioned for leave to intervene as parties plaintiff. The trial court granted their petition.

In a bench trial, the parties submitted a written stipulation of facts, including exhibits attached thereto. Based upon these facts, the trial court enjoined the payment of the attorneys' fees incurred by Wood, ruling that the payment was illegal. Wood appeals. The appellees are the Board of Supervisors and the nine parents (collectively, the Board of Supervisors).

## I

The facts, as stipulated by the parties, are as follows. Wood was the division superintendent of schools for Halifax County from 1965 until he retired in December 1983. On March 2, 1984, a seven-count felony indictment and a one-count misdemeanor indictment were returned against Wood by a Halifax County grand jury. On May 14, 1984, the grand jury returned another two-count felony indictment against Wood. These indictments contained various allegations that Wood, while serving as school superintendent, had misused public funds and had engaged in bid-rigging.

On March 5, 1984, the County of Halifax filed a bill of complaint in the Circuit Court of Halifax County against Wood and others under the Virginia Antitrust Act, Code § 59.1-9.1 through -9.18. In this civil action, Halifax County alleged that the defendants had conspired to rig bids in connection with the purchase of school buses for the Halifax County school system. In June 1984,

---

[1] The nine parents are Gladys Boyd, Roy A. Bradley, Jr., E. D. Hodnett, Jr., Carolyn F. Smiley, Deborah F. Ellington, Kermit L. Wright, A. S. Anderson, Jr., Margaret Hudson, and Tim D. Shelton.

the Commonwealth of Virginia was granted leave to intervene in the suit as a party plaintiff.

In March 1984, the law firm of Mays, Valentine, Davenport & Moore (Mays & Valentine) began its representation of Wood in connection with the criminal indictments and the civil suit. Mays & Valentine initially was contacted by a lawyer for the School Board regarding representation of Wood. There was no prior approval by the School Board regarding retaining counsel to represent Wood.

After a hearing on July 26, 1984, the Circuit Court of Halifax County dismissed the sole misdemeanor indictment against Wood, consolidated Counts 5 and 6 of the March felony indictment into one count, and dismissed Counts 2 and 3 of the March felony indictment. Thus, after July 26, 1984, six felony counts remained. Those counts contained allegations that Wood:

1. knowingly misused public funds through requesting and receiving reimbursement for improper expenses in violation of Va. Code § 18.2-112;
2. fraudulently used a public vehicle for personal benefit during the summer of 1982 in violation of Va. Code § 18.2-111;
3. unlawfully on or about August 1978, August 1979, and February 1981, by virtue of his office, knowingly misappropriated public funds by authorizing payments to L. A. Rice in violation of Va. Code § 18.2-112;
4. unlawfully conspired with L. A. Rice from August, 1978 through February, 1981 to misappropriate public funds by authorizing payments to Mr. Rice in the aggregate amount of $1,800 in violation of Va. Code §§ 18.2-112 and 18.2-22;
5. unlawfully and feloniously conspired with F. W. Merryman to rig, alter or manipulate bids submitted to the Halifax County School Board for the purchase of school buses in violation of Va. Code § 59.1-68.7; and
6. knowingly misappropriated funds in the amount of $35,876.00 by causing such funds to be deposited in the bank account of the Joint Committee for Control, said funds belonging to the Halifax County School System, in violation of Va. Code § 18.2-112.

Also on July 26, 1984, the Circuit Court of Halifax County granted Wood's motion for a change of venue of the criminal cases pursuant to Code § 19.2-25. Venue was changed to the Circuit Court of Hanover County, which ruled that Wood was entitled to four separate trials with respect to the six felony charges remaining against him. The trial on Counts 1 and 2 of the March felony indictment was scheduled to begin on August 22, 1984, in the Circuit Court of Hanover County.

On August 22, 1984, upon the motion of the Commonwealth's Attorney and pursuant to a plea agreement, Count 1 of the March felony indictment was reduced to the following misdemeanor charge to which Wood pled guilty: "that he did '[u]nlawfully between July 1978 and July 1983 [obtain] reimbursement from the Halifax County School System in an amount of less than $200 in violation of § 18.2-96 of the Code of Virginia.' " Also on motion of the Commonwealth's Attorney and pursuant to the plea agreement, all the remaining felony charges were dismissed.

In accordance with the plea agreement, the court's order provided, in pertinent part, as follows:

1. Restitution has already been made, and
2. The defendant will cooperate and make himself available and provide truthful information and testimony at all times and places as the Commonwealth may require and the defendant shall have the right to be represented by counsel.
3. Imposition of sentence will be suspended.

Following entry of the order, Wood met with prosecutors, investigators, and representatives of the Attorney General's office on several occasions.

On February 7, 1985, the Commonwealth's bill of complaint against Wood was dismissed. On February 22, 1985, the bill of complaint of the County of Halifax against Wood also was dismissed.

Wood subsequently applied to the School Board pursuant to Code § 22.1-82 for reimbursement of the attorneys' fees and expenses he had incurred in defending the dismissed civil and criminal proceedings. Mays & Valentine charged Wood $65,552.75 in attorneys' fees and expenses for the defense of the criminal charges that had been dismissed; $5,745.00 in fees and expenses

in connection with the misdemeanor charge to which Wood had pled guilty; and $11,069.00 in fees and expenses in connection with the civil action that had been dismissed. Mays & Valentine did not seek payment of fees incurred in connection with the plea agreement. After considering the matter at its meetings on February 4, 1985, March 12, 1985, and April 1, 1985, the School Board voted 6 to 3 to approve the following resolution:

Whereas, Udy C. Wood was required to hire counsel to defend himself against several criminal charges arising out of the performance of his duties as superintendent of schools; and

Whereas, the Board finds that Mr. Wood reasonably incurred $42,000 in attorneys' fees and expenses in defense of those charges, which sum does not include $5,745 which the Board finds was incurred in relation to the charge of petit larceny to which Mr. Wood pled guilty; and

Whereas, Mr. Wood was also required to hire counsel to defend himself in certain civil actions arising out of the performance of his duties as superintendent of schools; and

Whereas, the Board finds that Mr. Wood reasonably incurred $8,000 in attorneys' fees and expenses in defense of those civil actions.

Now, therefore, be it resolved that the Board, pursuant to [Code § 22.1-82] and in the exercise of its discretion, ratifies the employment of the law firm of Mays, Valentine, Davenport & Moore by Mr. Wood to defend himself against the aforesaid criminal charges and in the aforesaid civil actions and approves payment to the law firm of Mays, Valentine, Davenport & Moore of $50,000 for said defense of Udy C. Wood, such sum representing $42,000 arising out of the defense of the criminal charges and $8,000 arising out of the defense of the civil actions; . . . .

The School Board also conditioned payment of the fees upon the execution of an agreement under which Mays & Valentine agreed to place the funds in an interest-bearing escrow account so the funds, with interest, could be repaid to the School Board

should the payment subsequently be found unlawful. The School Board, Wood, and Mays & Valentine have entered into such an escrow agreement.

## II

 In approving Wood's attorneys' fees, the School Board resolved that it acted "pursuant to [Code § 22.1-82] and in the exercise of its discretion." Code § 22.1-82 provides in pertinent part as follows:

A. *Notwithstanding any other provision of law*, the attorney for the Commonwealth or other counsel may be employed by a school board to advise it concerning any legal matter or to represent it, any member thereof or *any school official in any legal proceeding* to which the school board, member, or official may be a party, when such proceeding is instituted by or against it or against the member or official by virtue of his actions in connection with his duties as such member or official.

B. All costs and expenses of such advice and all costs, expenses and liabilities of such proceedings shall be paid out of funds appropriated to the school board.

(Emphasis added.)

 The Board of Supervisors first contends that Code § 22.1-82 is not applicable because Wood is not a "school official" and the term "any legal proceeding" does not encompass a *criminal* proceeding. The Board of Supervisors asserts that the case is governed by Code § 22.1-83.[2] Code § 22.1-83 permits a school board, under certain circumstances, to pay the legal fees and expenses of a school board *employee*. Code § 22.1-82, on the other hand, authorizes a school board to employ counsel to represent only the school board, its members, "or any school official." Thus, Code

---

[2] Code § 22.1-83 provides as follows:

*Payment of employee's legal fees and expenses.*—If an employee of a school board is arrested, indicted or otherwise prosecuted on any charge arising out of any act committed in the discharge of his duties as such employee and such charge is subsequently dismissed or a verdict of not guilty is rendered or if an employee of a school board is made a defendant in any civil action arising out of his actions in connection with his duties as such employee, the school board may pay the legal fees and expenses of such employee.

§ 22.1-82 applies to a division superintendent of schools only if he is considered a school official.

■ Code § 22.1-64 provides that "[e]very division superintendent, before entering upon the duties of *office*, shall take and subscribe the oath prescribed for an *officer* of this Commonwealth." (Emphasis added.) Moreover, we have said that a division superintendent of schools is "a supervisory *official* who exercises powers involving a considerable degree of judgment and discretion." *Banks* v. *Sellers*, 224 Va. 168, 173, 294 S.E.2d 862, 865 (1982) (emphasis added). Clearly, therefore, Wood was a "school official" within the meaning of Code § 22.1-82.[3] Because Wood was a school official, the School Board properly relied upon Code § 22.1-82. This section applies to school officials, "[n]otwithstanding any other provision of law." *Id.*

■ It is equally clear that the term "any legal proceeding" is an all-encompassing generic classification that includes criminal as well as civil proceedings.[4] *Black's Law Dictionary* 807 (5th ed. 1979), defines "legal proceedings" as a term that "includes *all proceedings* authorized or sanctioned by law, and brought or instituted in a court or legal tribunal, for the acquiring of a right or the enforcement of a remedy." (Emphasis added.) *See also Van Horn* v. *City of Trenton*, 80 N. J. 528, 534-35, 404 A.2d 615, 618 (1979) (the term "legal proceeding" includes civil and criminal proceedings).

### III

The Board of Supervisors next contends that, even if Code § 22.1-82 does apply to criminal proceedings, the trial court's ruling is correct because the charges against Wood did not arise from his duties as superintendent. Code § 22.1-82 permits a school board to pay attorneys' fees incurred by a school official only

---

[3] In deciding that Wood is a school official, we do not mean to imply that he may not also be an employee.

[4] The Board of Supervisors argues that Code § 22.1-83 is the only applicable section because it specifically provides for the expenditure of public funds to defend criminal actions, while Code § 22.1-82 does not specifically address criminal proceedings. We reject this argument. Code § 22.1-83 also specifically provides for the expenditure of public funds to defend civil actions. Code § 22.1-82, however, does not specifically mention civil proceedings. Thus, taken to its logical end, the Board of Supervisors' argument would render Code § 22.1-82 a nullity and the section's use of the term "any legal proceeding" mere surplusage.

when the legal proceeding is instituted against the official "by virtue of his actions in connection with his duties as such . . . official."

■ The School Board considered Wood's request for payment of fees at three of its meetings. Having before it essentially the same facts as are stated herein, the School Board found that the civil suit and the criminal charges, except for the misdemeanor to which Wood had pled guilty, arose out of "the performance of [Wood's] duties as superintendent."

The Board of Supervisors contends that the School Board's finding cannot stand. The Board of Supervisors asserts that because the dismissals of the remaining criminal charges and the civil suit were part and parcel of the agreement by which Wood pled guilty to the misdemeanor, the dismissed proceedings, as a matter of law, were not instituted against Wood "by virtue of his actions in connection with his duties" as superintendent of schools. In short, the Board of Supervisors argues that Wood's guilty plea to the misdemeanor charge was tantamount to a guilty plea to all. the dismissed felony charges. The trial court adopted this argument of the Board of Supervisors as a basis for ruling that payment of Wood's attorneys' fees was illegal. Thus, the fundamental issue on appeal is whether the facts presented to the School Board sustain its finding that the dismissed charges were brought against Wood "by virtue of his actions in connection with his duties" as superintendent.

■ In *Spotsylvania School Board* v. *McConnell*, 215 Va. 603, 607, 212 S.E.2d 264, 267 (1975), we said that "the decision of a school board will not be disturbed by the courts unless the board acted in bad faith, arbitrarily, capriciously, or in abuse of its discretion, or there is no substantial evidence to sustain its action." *Accord Bristol Virginia School Board* v. *Quarles*, 235 Va. 108, 119-20, 366 S.E.2d 82, 89 (1988). Indeed, "[w]here there is a rational legal and factual basis for a school board's administrative determination, the Court will not overturn such decision and substitute its own judgment even if it would have reached a contrary conclusion." *McConnell*, 215 Va. at 607, 212 S.E.2d at 268 (quoting *White* v. *Board of Ed., Union Free Sch., Dist. No. 3*, 74 Misc.2d 171, 172, 344 N.Y.S.2d 564, 566 (1973)). Consequently, the party who assails a school board's decision bears the burden of proving that the decision is illegal.

The Board of Supervisors contends that all the criminal charges against Wood were combined into one charge to which Wood pled guilty and that the dismissal of the civil suit was part of the plea agreement. We do not agree.

The terms of the plea agreement are set forth in letters exchanged between the special prosecutor and Wood's attorney. Count 1 in the March indictment charged that Wood "[u]nlawfully and feloniously did between July 1978 and July 1983 . . . knowingly misuse public money through requesting and receiving reimbursement for improper expenses . . ." The special prosecutor, in a letter to Wood's counsel, set forth his understanding of the agreement, stating, *inter alia*, that the indictment would be amended to charge that Wood " '[u]nlawfully between July 1978 and 1983 obtained reimbursement from the Halifax County School System in an amount of less than $200.00 . . .' " The special prosecutor's letter also states that "[a]fter the plea has been made and accepted, the Commonwealth will move to dismiss the remaining charges against [Wood]."

■ In accordance with the plea agreement, the Circuit Court's order of August 22, 1984, states that "upon motion of the Attorney for the Commonwealth, Count 1 of the Indictment was amended to [the] misdemeanor charge." After Wood pled guilty to the amended misdemeanor charge, the court approved the plea agreement, found Wood guilty of the misdemeanor, and imposed the sentence agreed upon by the parties. The court order further provides that "[u]pon motion of the Attorney for the Commonwealth, it is ORDERED that all remaining Indictments against [Wood] be, and they are hereby dismissed." Thus, the plea agreement and the order of the Circuit Court of Halifax County approving the agreement clearly show that Wood pled guilty to a lesser-included offense in Count 1 and the remaining criminal charges were dismissed. Accordingly, Wood was not convicted of any of the original criminal charges, but was convicted of only the misdemeanor, resulting from the amendment to Count 1.

■ Nothing in either letter suggests that the dismissal of the civil suit was a condition of the plea agreement. Indeed, in response to the special prosecutor's letter, Wood's attorney noted that no mention had been made of the civil suit. According to Wood's attorney, the Commonwealth was to interview Wood regarding the civil suit "and then . . . , in good faith, . . . make a decision to dismiss [Wood] as a defendant." Moreover, the civil

suit was not dismissed until six months after the disposition of the criminal charges. Clearly, therefore, the dismissal of the civil suit was a voluntary act of the plaintiffs in the civil suit, separate and distinct from the plea agreement.

■ Other facts presented to the School Board support its finding that the dismissed charges against Wood arose in connection with his duties as superintendent. For example, the record discloses that the School Board reasonably could have found that many of the dismissed charges were frivolous. The School Board had before it for consideration a memorandum prepared by Wood's counsel, which is included in the stipulated facts. The memorandum explained in some detail the circumstances underlying the various charges against Wood. The undisputed facts reveal the patent baselessness of an embezzlement charge.

Wood was charged with embezzling $35,876 of the School Board's funds by "causing these monies to be deposited in the bank account of the Joint Committee for Control." The School Board applied for and received a grant from the Federal Department of Energy under which the School Board would be reimbursed for the cost of storm windows for five elementary schools. In September 1981, the School Board submitted a form to the Department of Energy requesting reimbursement for $35,876, the amount spent on the windows. On February 3, 1982, the $35,876 check from the Department of Energy was received and deposited to the account of the Joint Committee for Control.

At least four members of the School Board were aware of the deposit, since four of the five members of the Joint Committee also were members of the School Board. Moreover, the minutes of the Joint Committee indicated that the deposit of such monies was acknowledged. Neither Wood, the Joint Committee, nor any member of the School Board attempted to hide any fact regarding this transaction. Indeed, all the money remained at all times in a school account for educational purposes.

■ Additional facts were presented to the School Board from which it reasonably could have concluded that the dismissed proceedings were baseless and, therefore, arose out of Wood's performance of the duties of his office. Moreover, nothing in the record suggests that the School Board acted in bad faith, arbitrarily, or in abuse of its discretion. For all these reasons, we conclude that the trial court erred in holding that the dismissed proceedings were not instituted against Wood "by virtue of his actions in con-

nection with his duties." *Cf. Beckett* v. *Board of Supervisors*, 234 Va. 614, 363 S.E.2d 918 (1988).

## IV

Finally, the Board of Supervisors urges us to hold, as the lower court held, that, as a matter of public policy, Wood's guilty plea prevents any reimbursement for fees and expenses arising from the defense of the dismissed charges. Although we can appreciate the legitimacy of such a public policy, we decline to adopt it here for two reasons. First, we acknowledge the existence of competing, and perhaps equally legitimate, public policies, *e.g.*, protecting public servants from bearing the expense of defending frivolous charges. Second, it is the responsibility of the legislature, not the judiciary, to formulate public policy, to strike the appropriate balance between competing interests, and to devise standards for implementation.

## V

For the foregoing reasons, we will reverse the judgment of the trial court, dissolve the injunction, and remand the cause for further proceedings consistent with this opinion.

*Reversed and remanded.*

CARRICO, C.J. and POFF, J., dissenting.