Present:    All the Justices

MARK T. FINN

                              OPINION BY JUSTICE LEROY R. HASSELL, SR.
v.  Record No. 990377              January 14, 2000

VIRGINIA RETIREMENT SYSTEM, ET AL.

             FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Randall G. Johnson, Judge

                                    I.

     The primary issue we consider in this appeal is whether

Code § 2.1-526.8 confers upon a former trustee of the Virginia

Retirement System (VRS) a right of indemnification against the

Commonwealth for legal fees he incurred to defend criminal

investigations that allegedly arose out of the performance of

his official duties.

                                    II.

     Mark T. Finn, a former trustee of the VRS, filed an

amended bill of complaint seeking indemnification from the

Commonwealth of Virginia, the VRS, William E. Landsidle,

Comptroller, and RF&P Corporation.  Finn alleged in his

amended bill that he is entitled to indemnification for costs

that he incurred in defense of criminal investigations against

him arising out of his service as a trustee of the VRS and as

a director of RF&P.  The Commonwealth, the VRS, and Landsidle

(collectively referred to as the Commonwealth) filed demurrers

to the amended motion.  The circuit court sustained the

demurrers, holding that neither Code § 51.1-124.28 nor the common law confers upon Finn a right of indemnification against the Commonwealth. The court also rejected Finn's contentions that Code § 51.1-124.28 violated certain provisions of the Virginia and United States Constitutions. Finn appeals.[1]

The circuit court decided this case at the demurrer stage of the proceedings and, therefore, we will consider as true "all material facts that are properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts." Cox Cable Hampton Roads, Inc. v. City of Norfolk, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991). Even though the amended bill of complaint and exhibits exceed 100 pages, we will only state those allegations that are necessary for our resolution of this appeal.

In 1990, Finn served as a trustee of the VRS. In that capacity, Finn and his fellow trustees had oversight responsibilities for the VRS' operations and investments. The VRS owned a substantial amount of stock in RF&P. According to Finn's allegations, he and certain other VRS trustees were concerned that the CSX Corporation might increase its

---

[1] RF&P did not file a demurrer and is not a party in this appeal.

2

ownership of stock in RF&P to the detriment of minority shareholders, like the VRS, thereby compelling the minority shareholders "to relinquish their securities at below-market prices. In order to protect the VRS from such a strategy, [a special committee of the VRS] reached a consensus to recommend . . . that the VRS purchase additional RF&P securities."

The VRS Board of Trustees approved the purchase of additional RF&P securities. "On August 3, 1990, the VRS disclosed publicly an increase in its RF&P holdings by 1,267,000 dividend obligations. This included its open market purchases and the acquisition of 1,126,400 dividend obligations from Norfolk Southern." Ultimately, "CSX and VRS [entered into] a transaction . . . in which CSX would acquire RF&P's railroad assets and the VRS would [control] its real estate assets."

This transaction gave rise to federal and state criminal investigations. The Attorney General of Virginia conducted an investigation, and the United States Attorney for the Eastern District of Virginia also conducted an investigation. Finn retained counsel to defend him in the criminal investigations as well as certain civil actions.

"Finn's counsel was informed — in a letter dated December 13, 1993 [from the United States Attorney] — that Finn 'should be designated a "target" in the . . . investigation.' The

Department of Justice Manual defines a target to be 'a person as to whom the prosecutor or the grand jury has substantial evidence linking him/her to the commission of the crime and who, in the judgment of the prosecutor, is a putative defendant.'" The United States Attorney stated in the letter to Finn's counsel that "'[b]ased on information from a large number of sources,' it appeared that Finn had committed 'numerous violations of the securities statutes, as well as mail and wire fraud, and conspiracy regarding these offenses.'"

Finn vehemently maintained his innocence throughout the state and federal investigations. At the conclusion of the investigations, Finn was not charged with any crimes. "In mounting a defense in connection with the federal investigations, Finn incurred expenses, including attorneys' fees, totaling $1,123,522.14. Finn incurred these expenses as a direct result of his role and his actions taken as a Director of RF&P and Trustee of the VRS."

### III.

### A.

Finn argues that the circuit court erred in sustaining the defendants' demurrers. Finn contends that Code § 2.1-526.8 "provides a right of indemnification to officials of the Commonwealth who successfully defend false criminal

4

allegations arising out of the performance of [their] official duties."  Responding, the Commonwealth argues that Code § 2.1-526.8 does not create a statutory right for reimbursement but, rather, directs the Department of General Services to establish an insurance plan.  We agree with the Commonwealth.

Code § 2.1-526.8 states in relevant part:

"A.  Subject to the approval of the Governor, the Department of General Services through its Division of Risk Management shall establish an insurance plan, which may be purchased insurance, self-insurance or a combination of self-insurance and purchased insurance:
"1.  To provide protection against liability imposed by law for damages resulting from:
"a.  Any claim made against any department, agency, institution, board, commission, officer, agent, or employee thereof for acts or omissions of any nature while acting in an authorized governmental or proprietary capacity and in the course and scope of employment or authorization;

.  .  .  .

"3.  If the Division of Risk Management is informed by the Attorney General's Office that it will not provide a defense due to a conflict or other appropriate reason, to provide for payment of attorneys' fees and expenses incurred in defending such persons and entities concerning any claim which arises from their governmental employment or authorization, which arises from their participation in such student disciplinary proceedings, or which is described in any such indemnification agreement.
"B.  Any insurance plan established pursuant to this section shall provide for the establishment of a trust fund or contribution to the State Insurance Reserve Trust Fund for the payment of claims covered under such plan.  The funds shall be invested as provided in § 2.1-185 and interest shall be added to the fund as earned.  The trust fund shall also provide for payment of administrative costs,

5

contractual costs, and other expenses related to the administration of such plan.

"C. The insurance plan for public liability shall be submitted to the Governor for approval prior to implementation."

Code § 2.1-526.8 is not self-executing. Rather, the General Assembly, through the enactment of that statute, has directed that the Department of General Services through its Division of Risk Management establish an insurance plan which must be submitted to and approved by the Governor before implementation. Code § 2.1-526.8 specifies the types of insurance coverages that must be included within the insurance plan and identifies persons and entities who must be insured through the insurance plan.

Even though the statute describes the scope of the insurance coverage and the nature of the insurance coverage to be included within the insurance plan, the statute does not confer specific rights upon individuals. Rather, any individual who believes that he or she may be entitled to reimbursement must seek payment in accordance with the provisions of any insurance plan that has been established pursuant to Code § 2.1-526.8. Therefore, we hold that the circuit court properly sustained the Commonwealth's demurrer because Code § 2.1-526.8 does not create a statutory right of reimbursement for Finn.

B.

6

Finn argues that the circuit court erred by sustaining the demurrer because, he says, the Commonwealth has a common law duty to "reimburse public officials under the limited circumstances in which they successfully defend criminal proceedings arising out of the faithful execution of official duties."  Continuing, Finn, relying upon Wood v. Board of Supervisors, 236 Va. 104, 372 S.E.2d 611 (1988), argues that "[a]lthough this Court has not previously considered whether the common law obligates state agencies to reimburse its officials, the Court has recognized the basis for such a duty: the legitimate public policy of protecting public servants from frivolous criminal charges."

In Wood, we considered whether Code § 22.1-82 authorized a school board to reimburse a division superintendent for expenses he incurred in criminal and civil proceedings arising out of the performance of his duties.[2]  We held that Code

---

[2] Code § 22.1-82, the statute that was at issue in Wood, states:

"A.  Notwithstanding any other provision of law, the attorney for the Commonwealth or other counsel may be employed by a school board to advise it concerning any legal matter or to represent it, any member thereof or any school official in any legal proceeding to which the school board, member or official may be a party, when such proceeding is instituted by or against it or against the member or official by virtue of his actions in connection with his duties as such member or official.

7

§ 22.1-82 conferred upon the school board the statutory authority to reimburse its division superintendent. We rejected the Board of Supervisors' request that this Court hold, as a matter of public policy, that the superintendent was barred from reimbursement for fees and expenses arising from the defense of certain dismissed charges because he pled guilty to a misdemeanor offense for which he was not reimbursed legal fees and expenses. Wood, 236 Va. at 115, 372 S.E.2d at 618. We stated:

> "Although we can appreciate the legitimacy of such a public policy, we decline to adopt it here for two reasons. First, we acknowledge the existence of competing, and perhaps equally legitimate, public policies, e.g., protecting public servants from bearing the expense of defending frivolous charges. Second, it is the responsibility of the legislature, not the judiciary, to formulate public policy, to strike the appropriate balance between competing interests, and to devise standards for implementation."

Id.

Even though we recognized in Wood the existence of a public policy of protecting public employees from bearing the legal expense associated with the defense of frivolous charges, we concluded that the General Assembly, not the judiciary, was the appropriate branch of government to

---

"B. All costs and expenses of such advice and all costs, expenses and liabilities of such proceedings shall be paid out of funds appropriated to the school board."

8

implement such policy.  Likewise, we decline Finn's invitation to fashion public policy and create a common law right which would entitle a public official to obtain reimbursement from the Commonwealth for legal expenses.  It is the province of the General Assembly, not the judiciary, to create such right.

C.

In 1997, the General Assembly enacted Code § 51.1-124.28 which states:

> "Upon the acquittal, dismissal of charges, nolle prosequi, or any other final disposition concluding the innocence of any trustee, advisory committee member, officer, or employee of the Retirement System brought before any regulatory body, summoned before any grand jury, investigated by any law-enforcement agency, arrested, indicted, or otherwise prosecuted on any criminal charge arising out of any act committed in the discharge of his official duties which alleges a violation of state or federal securities laws, the Board may reimburse all or part of the cost of employing legal counsel and such other costs as are demonstrated to have been reasonably necessary for his defense.  The Board shall provide for the payment of such legal fees and expenses out of funds appropriated for the administration of the Retirement System."

Acts 1997, ch. 821, cl. 2, provides:  "[t]hat the provisions of this act shall not authorize the Board of the Virginia Retirement System to reimburse any trustee, advisory committee member, officer, or employee of the Virginia Retirement System for any costs incurred in connection with any act of such person occurring prior to July 1, 1997."

9

Finn alleged in his amended bill that the language in Acts 1997, ch. 821, cl. 2, which limits the power of the Board of Trustees of the VRS to reimburse trustees for claims arising on or after July 1, 1991, violates Virginia's constitutional prohibition against special laws.  Continuing, Finn argues that this restriction "excludes him arbitrarily from the benefits of the . . . Act while protecting identically situated trustees from being placed in the position in which he now finds himself."  The Commonwealth responds that the Act cannot be deemed a special law merely because it became effective in accordance with art. IV, § 13 of the Constitution of Virginia which requires that laws enacted at a regular session take effect on the first day of July following the adjournment of the session of the General Assembly in which the law has been enacted.

Article IV, § 14 (18) of the Constitution of Virginia provides, in part:  "[t]he General Assembly shall not enact any local, special, or private law . . . [g]ranting to any private corporation, association, or individual any special or exclusive right, privilege, or immunity."  Article IV, § 15 of the Constitution of Virginia, provides, in pertinent part:

> "In all cases enumerated in the preceding section . . . the General Assembly shall enact general laws.  Any general law shall be subject to amendment or repeal, but the amendment or partial repeal thereof shall not operate directly or

indirectly to enact, and shall not have the effect of enactment of, a special, private, or local law.

". . . . No private corporation, association, or individual shall be specially exempted from the operation of any general law, nor shall a general law's operation be suspended for the benefit of any private corporation, association, or individual."

All statutes enacted by the General Assembly are presumed to be constitutional. Pulliam v. Coastal Emergency Services, 257 Va. 1, 9, 509 S.E.2d 307, 311 (1999); King v. Virginia Birth-Related Neurological Injury Compensation Program, 242 Va. 404, 408, 410 S.E.2d 656, 659 (1991). A litigant who challenges the constitutional validity of a statute has the burden of proving that the challenged legislation is unconstitutional, and any reasonable doubt as to the statute's constitutionality must be resolved in favor of its validity. Pulliam, 257 Va. at 9, 509 S.E.2d at 311; King, 242 Va. at 408, 410 S.E.2d at 659.

We have also stated the following principles which we must apply here:

> "The constitutional prohibition against special laws does not prohibit legislative classifications. Holly Hill Farm Corp. v. Rowe, 241 Va. 425, 430, 404 S.E.2d 48, 50 (1991). Rather, the prohibitions require that such classifications be 'natural and reasonable, and appropriate to the occasion.' Benderson Development Company v. Sciortino, 236 Va. 136, 140-41, 372 S.E.2d 751, 753 (1988); Holly Hill, 241 Va. at 430, 404 S.E.2d at 50. 'Taken together, the pervading philosophy of Article IV, sections 14 and 15 reflects an effort to avoid favoritism, discrimination, and inequalities in the application of the laws.' Benderson at 147, 372 S.E.2d at 756.

11

> Additionally, 'the necessity for and the
> reasonableness of classification are primarily
> questions for the legislature.  If any state of
> facts can be reasonably conceived, that would
> sustain it, that state of facts at the time the law
> was enacted must be assumed.'  Etheridge, 237 Va. at
> 102, 376 S.E.2d at 533 (quoting Martin's Ex'rs v.
> Commonwealth, 126 Va. 603, 612-13, 102 S.E. 77, 80
> (1920))."

King, 242 Va. at 409, 410 S.E.2d at 659-60.

Applying these principles, we hold that Acts 1997, ch. 821, cl. 2, does not violate Virginia's constitutional prohibition against special laws.  The only classification which Finn challenges is the Act's distinction between legal costs and expenses that were incurred after July 1, 1997, which the Board of Trustees of the VRS in the exercise of its discretion may reimburse and expenses and costs incurred before that date, which do not fall within the scope of the Act.  Certainly, it is reasonably conceivable that the General Assembly established this classification in accordance with Va. Const. art. IV, § 13, which provides in part that:  "[a]ll laws enacted at a regular session . . . shall take effect on the first day of July following the adjournment of the session of the General Assembly at which it has been enacted."  This fact alone compels us to conclude that the challenged statute does not constitute special legislation.

D.

12

Finn contends that Acts 1997, ch. 821, cl. 2, violates the Equal Protection Clause of the federal constitution. Finn argues that the General Assembly had no rational basis for distinguishing between the current VRS trustees who may be entitled to recover legal fees they expended after July 1, 1997 and himself. Finn's contention is without merit.

The Equal Protection Clause states, in part, that no state shall "deny to any person . . . the equal protection of the laws." U.S. Const. amend. XIV, § 1. Because the classification that Finn challenges neither infringes upon a fundamental right nor creates a suspect class, we must apply the rational basis test to ascertain whether the statute can withstand an equal protection challenge. Heller v. Doe, 509 U.S. 312, 319-21 (1993); Exxon Corp. v. Eagerton, 462 U.S. 176, 195-96 (1983); Hodel v. Indiana, 452 U.S. 314, 331-32 (1981); Pulliam, 257 Va. at 20-21, 509 S.E.2d at 318; King, 242 Va. at 411, 410 S.E.2d at 661.

We have held that a classification will not be invalidated merely because it results in some inequality or some discrimination. King, 242 Va. at 411, 410 S.E.2d at 661; Etheridge v. Medical Center Hospitals, 237 Va. 87, 104, 376 S.E.2d 525, 534 (1989). Rather, "[t]he rational basis test is satisfied 'if the legislature could have reasonably concluded that the challenged classification would promote a legitimate

13

state purpose.'"  Id.  The United States Supreme Court stated

in McGowan v. Maryland, 366 U.S. 420, 425-26 (1961), that

> "the Fourteenth Amendment permits the States a wide
> scope of discretion in enacting laws which affect
> some groups of citizens differently than
> others. . . .  State legislatures are presumed to
> have acted within their constitutional power despite
> the fact that, in practice, their laws result in
> some inequality.  A statutory discrimination will
> not be set aside if any state of facts reasonably
> may be conceived to justify it."

Additionally, "[a] State . . . has no obligation to produce

evidence to sustain the rationality of a statutory

classification.  '[A] legislative choice is not subject to

courtroom factfinding and may be based on rational speculation

unsupported by evidence or empirical data.'"  Heller, 509 U.S.

at 320 (quoting FCC v. Beach Communications, Inc., 508 U.S.

307, 315 (1993)).

In applying the rational basis test, we must consider

whether any stated facts reasonably may be conceived to

justify the General Assembly's decision that Code § 51.1-

124.28 should apply to claims arising after July 1, 1997.  We

hold that this test is satisfied because, as we have already

stated, the General Assembly may have relied upon Va. Const.

art. IV, § 13 when determining what expenses may be reimbursed

by the Board of Trustees of the VRS.

IV.

14

For the foregoing reasons, we will affirm the judgment of the circuit court.

<u>Affirmed</u>.