BEALES, J.,
concurring.
Although I agree that the trial court here did not err, my reasons for reaching this decision differ from those expressed in the majority opinion. Therefore, I write separately.
Mother is the biological and legal parent of the child, a fact that appellant does not contest. Mother is a fit parent, which appellant also does not contest. Therefore, mother has a “fundamental right ... to make decisions concerning the care, custody, and control” of her child, a right that the state cannot infringe upon without some compelling state interest. Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000); see Williams v. Williams, 256 Va. 19, 21, 501 S.E.2d 417, 418 (1998).
Appellant, on the other hand, has no legal claim under United States law or Virginia law to parental rights. She did not give birth to the child, see Code § 20-49.1(A), she did not adopt the child, see Code § 20-49.1(0, and no previous court order gave her any parental rights. Code § 20-158(A), which defines the parentage of a child conceived by assisted conception, as was the case here, states that the gestational mother and the husband of that mother are the parents. The language of this statute does not state or suggest that any other person is also a parent to a child conceived in this manner. Under Virginia law, therefore, appellant is not a parent to this child. In fact, appellant concedes that no Virginia statutory or case law nor any United States constitutional law explicitly gives her parental rights to this child, although she is a person with a legitimate interest in the child, as the trial court found. See Code § 20-124.1. The United States Supreme Court cases that she cites do not suggest that a non-parent, such as appellant, has rights equivalent to the rights of a fit, biological *97 parent. For example, Moore v. City of East Cleveland, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), involves housing codes and extended families, and Smith v. Organization of Foster Families for Equality & Reform, 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977), involves unfit parents and foster care regulations. The cases from our sister states that appellant cites carry no precedential value here in Virginia, especially since their decisions are based on the legislative decisions and common law of those states.
The General Assembly has enacted statutes that allow infringement upon a parent’s right to raise and nurture his or her child only in particular circumstances. Code § 16.1-283, for example, allows the Commonwealth to terminate the rights of unfit parents. The General Assembly also has passed legislation that allows a person with a legitimate interest in a child, such as appellant, to prove by clear and convincing evidence that, if some actual harm to the child’s health or welfare will occur, then the Commonwealth sanctions interference with a fit parent’s rights. Code § 20-124.2(B); Williams, 256 Va. at 21-22, 501 S.E.2d at 418. Here, appellant concedes and the trial court found that mother is a fit parent. Therefore, the trial court applied the appropriate law as the General Assembly has not enacted a statute recognizing a de facto parent with essentially the same rights and obligations towards a child as a fit, actual parent.
Since the General Assembly has not determined that a compelling state interest exists for interference with the decisions of a fit, biological parent, apart from Code § 20-124.2, I do not believe that the courts should or can judicially legislate such an infringement. It is “the role of the General Assembly, not the judiciary, to change a rule of law that has been relied upon by bench and bar for so long.” Shipman v. Kruck, 267 Va. 495, 503, 593 S.E.2d 319, 323 (2004).
Appellant does not argue that any Virginia statute or common law principle requires the application of the de facto parent concept as she defines it. Nonetheless, appellant asks this Court to create by judicial fiat a new category of parent, a *98 de facto parent, who would have the same rights as an actual, fit parent. However, in this case,
“it is the responsibility of the legislature, not the judiciary, to formulate public policy, to strike the appropriate balance between competing interests, and to devise standards for implementation.” Wood v. Board of Supervisors of Halifax Cty., 236 Va. 104, 115, 372 S.E.2d 611, 618 (1988); accord Morris v. Morris, 238 Va. 578, 588, 385 S.E.2d 858, 864 (1989). Once the legislature has acted, the role of the judiciary “is the narrow one of determining what [the legislature] meant by the words it used in the statute.” Diamond v. Chakrabarty, 447 U.S. 303, 318, 100 S.Ct. 2204, 2212, 65 L.Ed.2d 144 (1980). “[T]he contentions now pressed on us should be addressed to the political branches of the Government ... and not to the courts.” Id. at 317, 100 S.Ct. at 2212.
Dionne v. Southeast Foam Converting & Packaging, Inc., 240 Va. 297, 304, 397 S.E.2d 110, 114 (1990). As the General Assembly has defined “parent” in the context of assisted conception, which occurred in this case, and as appellant can point to no statutory or constitutional provision that supports her argument for the application of the defacto parent concept in this context, I believe this Court not only “need not” but also should not “rewrite Virginia law” to apply such a concept here. Since, as the majority opinion correctly holds, appellant’s constitutional rights are not infringed under the current law, the decision to adopt such a de facto parent doctrine in Virginia, in my view, is clearly that of the General Assembly, the people’s elected representatives, rather than the responsibility of the judicial branch.
On the other question presented, I do agree with the majority opinion that the trial court properly applied Code § 20-124.1. Therefore, I concur in the conclusion of the majority opinion and would also affirm the trial court.