COURT OF APPEALS OF VIRGINIA


Present:   Judges Powell, Alston and Senior Judge Annunziata
Argued at Alexandria, Virginia


JULIA SOUTER

MEMORANDUM OPINION[*] BY
v.       Record No. 0120-10-4          JUDGE CLEO E. POWELL
FEBRUARY 1, 2011

COUNTY OF WARREN


FROM THE CIRCUIT COURT OF WARREN COUNTY
Dennis L. Hupp, Judge

Kathleen M. Griffin, Senior Assistant Public Defender (Office of
the Public Defender, on brief), for appellant.

No brief or argument for appellee.


Julia Souter ("Souter") was convicted of violating former Warren County Code

§ 123-2(H) ("the noise ordinance").[1]  On appeal, Souter argues that the noise ordinance was

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] On September 21, 2010, in response to the Supreme Court of Virginia's decision in
Tanner v. City of Virginia Beach, 277 Va. 432, 674 S.E.2d 848 (2009), the Warren County
Board of Supervisors amended Chapter 123 of its code to add definitions, define prohibited
noise, amend the specific acts that are noise disturbances, set maximum sound pressure levels for
different zoning districts, amend list of exemptions and language for abatement and injunctive
relief, and allow both civil and criminal penalties.  See http://www.warrencountyva.net (from the
"Government" pull down menu, follow "Board of Supervisors" hyperlink.  Then follow, the
"BOS Meeting Minutes" hyperlink and select the "September 21, 2010: BOS Minutes"
hyperlink, then see pages 14-25).  Former § 123-1 (loud or disturbing noise prohibited) is now
§ 123-2 (prohibited noise generally).  It now reads

It shall be a violation of this chapter for any person, without
compelling reason, to make noise that by reason of its volume,
pitch, duration or repetition, considering the time of day, is likely
to disturb the rest of any person of any ordinary sensibilities or
interfere with such person's lawful and peaceful enjoyment of
property owned or rented by him.

unconstitutional because its language is vague and failed to give adequate notice to citizens of average intelligence as to what conduct is prohibited and encouraged arbitrary and discriminatory selective enforcement of the ordinance. She also argues that the evidence was insufficient to prove that the dogs on her property were responsible for the barking heard by the neighbors. For the reasons that follow, we agree that the noise ordinance was unconstitutional because it was vague and we reverse Souter's conviction.

## I. BACKGROUND

On June 6, 2008, Margaret J. Christian, one of Souter's neighbors, swore out a complaint alleging that between May 25 and June 6, Souter allowed her dogs to bark in an "excessive manner" during the "early morning – midday – [and] evening." Christian described the barking as "very loud – very upsetting." Souter was tried and convicted in general district court on July 22, 2008 of violating Warren County ordinance § 123-2(H): "unlawfully possess dogs by which frequent or habitual howling, yelping, barking or otherwise make such noises plainly audible across property boundaries." Souter appealed this conviction to the circuit court.

In her *de novo* appeal to the circuit court, Souter argued pretrial, *inter alia*, that the noise ordinance was unconstitutional because it was vague and overly broad. Specifically, she asserted that the noise ordinance did not specify sound levels that violated the law or the time periods

Warren Co. Code § 123-2(A) (adopted September 21, 2010). The chapter still enumerates certain acts that are per se violations, including pet noise:

> Allowing an animal to create howling, barking, whining, meowing, squawking or other such noises which are plainly audible across a property boundary or through partitions common to two residences within a building and that take place continuously or repeatedly (i) during a period of at least 15 minutes in duration between 7:00 a.m. and 10:00 p.m. or (ii) during a period of at least 10 minutes in duration between 10:00 p.m. and 7:00 a.m. . . . .

Warren Co. Code § 123-3(H) (adopted September 21, 2010).

during which certain sound levels violated the law.[2] The trial court held that the ordinance, as applied to Souter, was not overly broad or vague. At Souter's trial, several neighbors testified about the frequency with which her dogs barked and the effect that this barking had on their lives. The evidence also proved that Souter had been previously warned about the barking by a sheriff's deputy. Based on that, the trial court convicted Souter. This appeal follows.

## II. ANALYSIS

We must begin our review of an ordinance with the principle that

> duly enacted laws are presumed to be constitutional. We are required to resolve any reasonable doubt concerning the constitutionality of a law in favor of its validity. Thus, if a statute or ordinance can be construed reasonably in a manner that will render its terms definite and sufficient, such an interpretation is required.

Tanner v. City of Virginia Beach, 277 Va. 432, 438-39, 674 S.E.2d 848, 852 (2009) (citations omitted). "Additionally, 'it is a cardinal principle of law that penal statutes [and ordinances] are to be construed strictly against the [Commonwealth] . . . . Such a statute cannot be extended by implication, or be made to include cases which are not within the letter and spirit of the statute.'" Shreve v. Commonwealth, 44 Va. App. 541, 547, 605 S.E.2d 780, 783 (2004) (quoting Wade v. Commonwealth, 202 Va. 117, 122, 116 S.E.2d 99, 103 (1960)).

> [A] statute or ordinance [must] be sufficiently precise and definite to give fair warning to an actor that contemplated conduct is criminal. Thus, the language of a law is unconstitutionally vague if persons of "common intelligence must necessarily guess at [the] meaning [of the language] and differ as to its application." Connally v. General Construction Co., 269 U.S. 385, 391 (1926).

Tanner, 277 Va. at 439, 674 S.E.2d at 852 (citations omitted).

---

[2] Counsel noted that other sections of the ordinance contained limiting language as to time periods that narrowed those provisions of the ordinance.

In <u>Tanner</u>, two nightclub proprietors brought suit challenging the constitutionality of

Virginia Beach's noise control ordinance. In pertinent part, that ordinance provided:

> "It shall be unlawful for any person to create, or allow to be
> created any unreasonably loud, disturbing and unnecessary noise in
> the city or any noise of such character, intensity and duration as to
> be detrimental to the life or health of persons of reasonable
> sensitivity or to disturb or annoy the quiet, comfort or repose of
> reasonable persons. The following acts, among others, are
> declared to be loud, disturbing and unnecessary noise in violation
> of this section, but such enumeration shall not be deemed to be
> exclusive:
>
> (1) The playing of any television set, radio, tape player,
> phonograph or any musical instrument in such a manner or with
> such volume as to annoy or disturb the quiet, comfort or repose of
> reasonable persons.
>
> (2) The keeping of any animal which, by causing frequent or
> long-continued noise, shall disturb the quiet, comfort or repose of
> the neighborhood to such an extent as to constitute a nuisance."

<u>Tanner</u>, 277 Va. at 435-36, 674 S.E.2d at 850 (quoting Virginia Beach City Code § 23-47). The

Supreme Court of Virginia concluded that the terms "unreasonably loud, disturbing, and

unnecessary" were unconstitutionally vague. <u>Id.</u> at 440, 674 S.E.2d at 853. Furthermore, the

Court concluded that "[t]he references in the ordinance to 'reasonable persons,' and to persons of

'reasonable sensitivity,' do not provide a degree of definiteness sufficient to save the ordinance

from the present vagueness challenge." <u>Id.</u> Because the Court concluded that the ordinance was

vague, it did not address the separate *per se* violations individually. <u>Id.</u> at 441-42 n. *, 674

S.E.2d at 854 n. *. Specifically, the Court stated, "[e]ach of these per se violations is defined as

constituting 'loud, disturbing and unnecessary noise' and, thus, cannot be evaluated separately

from those vague terms." <u>Id.</u> at 441, 671 S.E.2d at 854 (quoting Virginia Beach City Code

§ 23-47).

The facts in this case differ from <u>Tanner</u> in that in <u>Tanner</u>, the Supreme Court addressed

one self-contained ordinance while here we construe two related ordinances. This difference

does not affect the analysis, however. "[W]henever 'a given controversy involves a number of related [ordinances], they should be read and construed together in order to give full meaning, force, and effect to each.'" Boynton v. Kilgore, 271 Va. 220, 229, 623 S.E.2d 922, 927 (2006) (quoting Ainslie v. Inman, 265 Va. 347, 353, 577 S.E.2d 246, 249 (2003)). "A cardinal rule of statutory interpretation is that '[w]hen one [ordinance] addresses a subject in a general manner and another addresses a part of the same subject in a more specific manner, the two [ordinances] should be harmonized, if possible, and when they conflict, the more specific [ordinance] prevails.'" Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, 481, 666 S.E.2d 361, 369 (2008) (quoting Alliance to Save the Mattaponi v. Commonwealth, 270 Va. 423, 439-40, 621 S.E.2d 78, 87 (2005)). Here, former § 123-1 addressed noise violations in a general manner and § 123-2 enumerated specific acts that were per se violations. Thus, they were not in conflict and must be read together.

As §§ 123-1 and 123-2 must be read together, Tanner controls the disposition of Souter's appeal. Warren County's primary noise ordinance stated

> [i]t shall be unlawful for any person to create, assist in creating, permit, continue or permit the continuance of any unreasonably loud or disturbing sound of such character, intensity, volume, carrying power or duration as to disturb the comfort, repose, health or safety or [sic] any individual unless the sound is made in an activity conducted for the protection or preservation of the health, safety or life of some person. For the purposes of this chapter, "disturbing" is defined as an actual or imminent interference to peace or good order or a noise which endangers or injures the health or safety of humans or animals or which annoys or disturbs a reasonable person of normal sensibilities.

Warren Co. Code § 123-1. Code § 123-2 enumerated individual per se violations. Souter was convicted of violating Code § 123-2(H), which stated that no person shall "own, keep and have in his possession or harbor any dog, other animals or bird(s), which by frequent or habitual

howling, yelping, barking or otherwise make such noises as are plainly audible across property boundaries or through partitions common to two persons within a building."

Like the unconstitutionally vague ordinance at issue in <u>Tanner</u>, the Warren County ordinances prohibited any "unreasonably loud or disturbing sound of such character, intensity, volume, carrying power or duration as to disturb the comfort, repose, health or safety [of] any individual." Warren Co. Code § 123-1. As the Supreme Court held in <u>Tanner</u>, when used in this context, such adjectives are inherently vague because they require persons of average intelligence to guess at the meaning of these words. <u>Tanner</u>, 277 Va. at 440, 674 S.E.2d at 853 (citing <u>Thelen v. State</u>, 526 S.E.2d 60, 62 (Ga. 2000)). Here, as in <u>Tanner</u>, noise that one person may consider loud and disturbing may not disturb the sensibilities of another listener. As such, these phrases "do not provide a degree of definiteness sufficient to save the ordinance[s] from the present vagueness challenge." <u>Id.</u>

Finally, as in <u>Tanner</u>, although the Warren County ordinance contained a list of per se violations, we need not address the list because each of these per se violations is defined as constituting, "unreasonably loud or disturbing sound" and thus cannot be evaluated separately from those vague terms. Also, as previously stated, because the two provisions are not in conflict they must be read together. Moreover, like the ordinance in <u>Tanner</u>, the unconstitutional language cannot be severed to give the remaining per se provisions a definite and permissible construction because the vague language affects the content of the entire ordinance. <u>Id.</u> at 442, 674 S.E.2d at 854. As such, the entire ordinance is unconstitutionally vague.

## III.  CONCLUSION

For the foregoing reasons, we reverse Souter's conviction for violating Warren County

Code § 123-2(H) as then enacted.  Because we hold that the noise ordinance was

unconstitutional, we decline to address Souter's argument that the evidence is insufficient.

Reversed.

Alston, J. concurring.

I agree with the general principles of statutory interpretation outlined by the majority and concur in the result, because I believe we are bound by the *ratio decidendi* of Tanner v. City of Virginia Beach, 277 Va. 432, 674 S.E.2d 848 (2009). However, in my humble opinion, when Warren County Code § 123-1 is read together with Warren County Code § 123-2(H), the entire ordinance withstands constitutional muster.

As the majority correctly states, related ordinances must be "'read and construed together in order to give full meaning, force, and effect to each.'" Boynton v. Kilgore, 271 Va. 220, 229, 623 S.E.2d 922, 927 (2006) (quoting Ainslie v. Inman, 265 Va. 347, 353, 577 S.E.2d 246, 249 (2003)). Additionally, "if a statute or ordinance can be construed reasonably in a manner that will render its terms definite and sufficient, such an interpretation is required." Tanner, 277 Va. at 438-39, 674 S.E.2d at 852 (citing INS v. St. Cyr, 533 U.S. 289, 299-300 (2001); United States v. Harriss, 347 U.S. 612, 618 (1954); Pederson v. City of Richmond, 219 Va. 1061, 1065, 254 S.E.2d 95, 98 (1979)). Given these principles, I struggle with an analytical resolution that suggests that when a legislative body articulates per se violations of offensive behavior generally described in an introductory paragraph of an ordinance, the descriptions of the per se violations cannot be read together with the introductory language in such a way that alerts individuals of prohibited behavior. Considering the introductory language together with the per se violation language gives appropriate deference to the "principle that duly enacted laws are presumed to be constitutional," id. at 438, 674 S.E.2d at 852 (citing Marshall v. N. Va. Transp. Auth., 275 Va. 419, 427, 657 S.E.2d 71, 75 (2008); *In re* Phillips, 265 Va. 81, 85, 574 S.E.2d 270, 272 (2003); Yamaha Motor Corp., U.S.A. v. Quillian, 264 Va. 656, 665, 571 S.E.2d 122, 126 (2002); Finn v. Va. Ret. Sys., 259 Va. 144, 153, 524 S.E.2d 125, 130 (2000)), and to this Court's duty to "resolve any reasonable doubt concerning the constitutionality of a law in favor of its validity, id.

(citing *In re* Phillips, 265 Va. at 85-86, 574 S.E.2d at 272; Finn, 259 Va. at 153, 524 S.E.2d at 130; Walton v. Commonwealth, 255 Va. 422, 427, 497 S.E.2d 869, 872 (1998)).

Like the ordinance in Tanner, the ordinance in the instant case contains introductory language, which is found in Warren County Code § 123-1, and enumerated per se violations, which are found in Warren County Code § 123-2. When Warren County Code §§ 123-1 and 123-2(H) are read together, the provisions are "sufficiently precise and definite to give fair warning to any actor that contemplated conduct is criminal." Id. at 439, 674 S.E.2d at 852 (citing Kolender v. Lawson, 461 U.S. 352, 357 (1983); Grayned v. City of Rockford, 408 U.S. 104, 108 (1972)). "Because legislative bodies are '[c]ondemned to the use of words,' courts cannot require 'mathematical certainty' in the drafting of legislation." Id. (quoting Grayned, 408 U.S. at 110).[3] Accordingly, "an ordinance that lacks meticulous specificity nevertheless may survive a vagueness challenge if the ordinance as a whole makes clear what is prohibited." Id. (citing Grayned, 408 U.S. at 110*;* Esteban v. Centr. Missouri State Coll., 415 F.2d 1077, 1088 (8th Cir. 1969)).

Thus, a legislative scheme's language "must give fair warning to an actor that contemplated conduct is criminal," id. (citing Kolender, 461 U.S. at 357; Grayned, 408 U.S. at 108), and "the language of a law is unconstitutionally vague if persons of 'common intelligence must necessarily guess at [the] meaning [of the language] and differ as to its application,'" id.

---

[3] This assessment makes practical sense as it would be nearly impossible for any legislative body to proscribe conduct involving obnoxious animals unless some sort of numerical definition were placed in the legislative scheme or the "preamble language" outlining the purpose of a law was not provided. Moreover, to be enforceable, such a law would require a timer to be used to measure the duration of the noise and a counter to quantify the frequency of the noise. In addition, this timer and counter requirement would need to be specifically defined in the scheme. Obviously, the problem with this approach is that no legislative body could provide an exhaustive list of circumstances of proscribed conduct.

(quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926)). I would find that Warren County Code § 123-1 is aspirational in nature and simply provides preamble or introductory language proscribing "any unreasonably loud or disturbing sound" and that Warren County Code § 123-2(H) articulates *examples* of such noises in a manner sufficient to alert any actor to the specific conduct that is prohibited. It prohibits "own[ing], keep[ing] and hav[ing] in his possession or harbor[ing] any dog, other animal or bird(s), which by frequent or habitual howling, yelping, barking or otherwise make such noises as are plainly audible across property boundaries . . . ." Warren County Code § 123-2(H).

The term "frequent or habitual," as used in the Warren County Code, places any person of common intelligence on reasonable notice of what type of conduct is proscribed. Tanner held that the prohibition of "'unreasonably loud, disturbing and unnecessary noise,' noise of 'such character, intensity and duration as to be detrimental to the life or health of persons of reasonable sensitivity,' [and] noise that 'disturb[s] or annoy[s] the quiet, comfort or repose of reasonable persons,'" which was found in the ordinance's introductory paragraph, Tanner, 277 Va. at 440, 674 S.E.2d at 853, was unconstitutional because it did not contain ascertainable standards, id. (citing Thelen v. State, 526 S.E.2d 60, 62 (Ga. 2000); Nichols v. City of Gulfport, 589 So. 2d. 1280, 1283 (Miss. 1991)). The overriding concern of the Supreme Court in Tanner appears to be the lack of definition regarding decibel levels and volume, in addition to the arbitrary nature of the prosecution therein.[4] In the instant case, if Warren County Code §§ 123-1 and 123-2(H) are

---

[4] The Tanner Court said as much when it held:

> The references in the . . . ordinance to "reasonable persons," and to persons of "reasonable sensitivity," do not provide a degree of definiteness sufficient to save the ordinance from the present vagueness challenge. Such terms, considered in their context, delegate to a police officer the subjective determination whether persons whom the police officer considers to be of reasonable sensitivity would find the noise detrimental to their life or health.

read together, the focus of the noise ordinance is on the frequency of the noise and the rate of re-occurrence of the charged conduct. In my view, a person of common intelligence would understand that the repeated and constant nature of the conduct herein could be subject to prosecution.

Notwithstanding the foregoing analysis, my obligation to adhere to the principles of *stare decisis* dictates that Warren County Code §§ 123-1 and 123-2(H) may not be read together, and as such, I join in the result of the majority.

---

Likewise, these terms leave to a police officer the determination whether persons the police officer considers to be reasonable would be disturbed or annoyed in their comfort or repose by the particular noise at issue.

277 Va. at 440, 674 S.E.2d at 853.